No. 21-15923

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**
————————————————————

NOELLE LEE,
derivatively on behalf of THE GAP, INC.,

*Plaintiff-Appellant*,

vs.

ROBERT J. FISHER, *et al.*,

*Defendants-Appellees*,

– and –

THE GAP, INC.,

*Nominal Defendant-Appellee*.
————————————————————

On Appeal from the United States District Court
For the Northern District of California
The Honorable Sallie Kim
District Court Case 3:20-cv-06163-SK
————————————————

**APPELLANT'S OPENING BRIEF**
————————————————

BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr.
Yury A. Kolesnikov
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001
Facsimile: (858) 914-2002

*Attorneys for Plaintiff-Appellant Noelle Lee*

Dated: October 7, 2021

# Table of Contents

PRELIMINARY STATEMENT ................................................................1

STATEMENT OF JURISDICTION ........................................................4

STATEMENT OF ISSUES ....................................................................5

STATEMENT OF THE CASE ................................................................5

    I.     Factual Background ............................................................5

    II.    Gap's Forum-Selection Clause .........................................8

    III.   Procedural Background......................................................9

SUMMARY OF THE ARGUMENT....................................................11

STANDARD OF REVIEW ..................................................................12

ARGUMENT.......................................................................................12

    I.     The Court Should Reverse Because Enforcement of Gap's
         Forum-Selection Clause as to Plaintiff's Section 14(a)
         Claim Contravenes Strong Public Policy of the Forum as
         Expressed in the Exchange Act ......................................12

    II.    In Enforcing Gap's Forum-Selection Clause as to
         Plaintiff's Section 14(a) Claim, the District Court
         Misconstrued Precedent Dealing with Enforcement of
         Forum-Selection Clauses in International Agreements
         Negotiated by Sophisticated Parties or in a Context
         Where There Was No Waiver of Substantive Rights.................19

         A.    *Richards* ..................................................................19

i

      B.    *Advanced China Healthcare* ......................................................23

      C.    The Availability of Alternative Remedies Is Irrelevant ...................................................................................26

  III.    The Exchange Act's Anti-Waiver Provision Voids Gap's Forum-Selection Clause to the Extent It Requires the Dismissal and, Thus, Waiver of Plaintiff's Section 14(a) Claim ....................................................................................28

CONCLUSION ...................................................................................29

CERTIFICATE OF COMPLIANCE ................................................31

CERTIFICATE OF SERVICE .........................................................32

# Table of Authorities

## Cases

*Boilermakers Local 154 Ret. Fund v. Chevron Corp.*,
   73 A.3d 934 (Del. Ch. 2013)................................................................ 15, 16

*Butorin v. Blount*,
   106 F. Supp. 3d 833 (S.D. Tex. 2015)...........................................................14

*Colo. River Water Conservation Dist. v. United States*,
   424 U.S. 800 (1976) ....................................................................................17

*Cottrell v. Duke*,
   737 F.3d 1238 (8th Cir. 2013)................................................................ *passim*

*Gemini Techs., Inc. v. Smith & Wesson Corp.*,
   931 F.3d 911 (9th Cir. 2019)................................................................ *passim*

*In re infoUSA, Inc. S'holders Litig.*,
   953 A.2d 963 (Del. Ch. 2007)......................................................................10

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) ....................................................................................17

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*,
   473 U.S. 614 (1985) ....................................................................................29

*Murphy v. Gallagher*,
   761 F.2d 878 (2d Cir. 1985).........................................................................17

*Oakland Cnty. Emps. Ret. Sys. v. Massaro*,
   702 F. Supp. 2d 1012 (N.D. Ill. 2010) .........................................................27

*Richards v. Lloyd's of London*,
   135 F.3d 1289 (9th Cir. 1998) (*en banc*).............................................. *passim*

*Rosenbloom v. Pyott*,
    765 F.3d 1137 (9th Cir. 2014)....................................................10

*Salzberg v. Sciabacucchi*,
    277 A.3d 102 (Del. 2020)...........................................................14

*Shaev v. Baker*,
    2017 U.S. Dist. LEXIS 68523 (N.D. Cal. May 4, 2017) ............10

*Sprint Commc'ns, Inc. v. Jacobs*,
    571 U.S. 69 (2013) .....................................................................17

*Sun v. Advanced China Healthcare*,
    901 F.3d 1081 (9th Cir. 2018)....................................................23

*The Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972) ........................................................... *passim*

*Vimar Seguros Y Reaseguros v. M/V Sky Reefer*,
    515 U.S. 528 (1995) ...................................................................29

*Yei A. Sun v. Advanced China Healthcare*,
    901 F.3d 1081 (9th Cir. 2018)....................................... 23, 24, 26

## Statutes

15 U.S.C. § 78n(a)....................................................................4, 9

15 U.S.C. § 78aa(a) ......................................................... *passim*

15 U.S.C. § 78cc(a) ......................................................... *passim*

28 U.S.C. § 1331.............................................................................4

28 U.S.C. § 1332(a)(2) ...................................................................4

28 U.S.C. § 1367(a)........................................................................4

**Rules**

17 C.F.R. § 240.14a-9................................................................4, 9

## PRELIMINARY STATEMENT

This appeal concerns the District Court's blanket disregard of fundamental protections provided to shareholders of public companies under the Securities Exchange Act of 1934 ("Exchange Act"). Congress enacted the Exchange Act in the wake of the 1929 stock market crash to regulate the trading of public securities on national stock exchanges. In order to promote uniformity in the interpretation and enforcement of the Exchange Act, Congress decreed that federal courts would have exclusive jurisdiction over all actions seeking to enforce any liability or duty under the Exchange Act. Congress also provided that any contract or provision seeking to waive any right under the Exchange Act shall be void.

Plaintiff commenced this shareholder derivative action in the District Court on behalf of the nominal defendant The Gap, Inc. ("Gap" or the "Company") and against certain of its officers and directors. Plaintiff alleges that Defendants failed to disclose in the Company's 2019 and 2020 proxy statements certain unlawful and discriminatory business practices at Gap that put the Company at material risk. Plaintiff's complaint asserted a claim

1

for violation of Section 14(a) of the Exchange Act and SEC Regulation 14a-9 promulgated thereunder (together, "Section 14(a) claim") as well as state-law claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, abuse of control, and unjust enrichment.  In response to Plaintiff's complaint, Defendants moved to dismiss, including on the basis of Gap's unilaterally-adopted forum-selection clause that provides that any derivative action must be brought in Delaware Court of Chancery.

In complete disregard of the Exchange Act's exclusive-jurisdiction and anti-waiver provisions, the District Court granted the motion and dismissed all of Plaintiff's claims — including her Section 14(a) claim — on the basis of *forum non conveniens*.  This Court should reverse because under the familiar Supreme Court framework, which this Court has recently reaffirmed, *a forum-selection clause is unenforceable where it contravenes a strong public policy of the forum*, whether expressed in a statute or a judicial decision. Here, enforcement of Gap's clause contravenes strong public policy of federal courts (which is the relevant forum) as expressed in the Exchange Act's exclusive-jurisdiction and anti-waiver provisions.

2

In addition, the Exchange Act's anti-waiver provision voids the forum-selection clause at issue to the extent that it requires the dismissal of Plaintiff's Section 14(a) claim. There is no dispute — and the District Court acknowledged — that because the Delaware Court of Chancery does not have jurisdiction to hear Exchange Act claims, the enforcement of Gap's clause in full ensures that Plaintiff will have ***no opportunity at all*** to have her Section 14(a) claim adjudicated on the merits. Accordingly, the dismissal of Plaintiff's Section 14(a) claim on the basis of the clause amounts to a waiver of that claim, which the Exchange Act expressly forbids.

Notably, the District Court had before it a viable alternative that other courts have embraced in similar situations. Specifically, and at the very least, the District Court should have severed the Section 14(a) claim from Plaintiff's remaining state-law claims and adjudicated it on the merits. Instead, the District Court abused its discretion and misapplied the relevant precedent in enforcing the forum-selection clause in full.

For all these reasons, the Court should reverse the dismissal of Plaintiff's Section 14(a) claim and remand for further proceedings.

## STATEMENT OF JURISDICTION

The District Court had subject matter jurisdiction under 28 U.S.C. § 1331 because the complaint asserts a cause of action arising under federal law for violation of Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and SEC Regulation 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9, over which federal courts have exclusive jurisdiction. *See* 15 U.S.C. § 78aa(a). The District Court had supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367(a) because those claims are so related to the Section 14(a) federal claim so as to form part of the same case or controversy.

The District Court also had subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a)(2) because there is a complete diversity of citizenship between Plaintiff (who is a citizen of a foreign state) and Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* ER-061–62 (¶¶ 22, 26).

This Court has jurisdiction under 28 U.S.C. § 1291 because this appeal is from the final judgment dismissing the case. The District Court entered the judgment on April 27, 2021. ER-003. Plaintiff timely filed her Notice of

4

Appeal on May 24, 2021.  *See* ER-138–139; Fed. R. App. P. 4(a).

## STATEMENT OF ISSUES

Issue 1:      Did the District Court err in granting the motion to dismiss based on a forum-selection clause where enforcement of the clause with regard to Plaintiff's Section 14(a) claim would contravene federal law and policy as reflected in the Exchange Act's exclusive-jurisdiction and anti-waiver provisions and where there are no countervailing principles of international comity weighing in favor of enforcement?

Issue 2:      Does the Exchange Act's anti-waiver provision void Gap's forum-selection clause to the extent it requires the dismissal and, thus, waiver of Plaintiff's Section 14(a) claim?

## STATEMENT OF THE CASE

### I.      Factual Background

Nominal Defendant The Gap, Inc. ("Gap" or the "Company") is a Delaware corporation with headquarters in San Francisco, California.  ER-062 (¶ 27).  As a publicly-traded company, Gap is subject to the federal securities laws and regulations, and files reports with the U.S. Securities and

5

Exchange Commission ("SEC"), which are disseminated to shareholders. These reports include annual proxy statements that solicit shareholders' votes on corporate management issues like the re-election of directors, shareholder proposals, and executive compensation.

This derivative action stems from Defendants' failure to disclose in the Company's 2019 and 2020 proxy statements certain unlawful and discriminatory business practices at Gap that made other statements in the Proxies false and misleading and put the Company at material risk. Specifically, Plaintiff alleges that despite the Company's public statements regarding diversity, Gap has failed to create any meaningful racial or ethnic diversity at the very top of the Company — on its Board and executive management team. *See, e.g.*, ER-050–53 (¶¶ 1–2). In fact, Gap's own statistics reveal that when the Company does hire African Americans and other minorities, it overwhelmingly hires them for low-level and low-paying jobs in its distribution centers. *See, e.g.*, ER-054, 073–74 (¶¶ 4, 74). For example, while African Americans comprise only 4% of employees at the Company's headquarters and only 9% of U.S. store leadership, they comprise 23% of

6

employees at the Company's distribution centers. *Id.*

At issue in this case are the Company's 2019 and 2020 proxy statements ("2019 Proxy" and "2020 Proxy"). Both the 2019 and 2020 Proxies stated that nominees to the Company's board of directors ("Board") are identified and considered based on, among other things, "background" and "race/ethnicity." *See* ER-085 (¶ 101). The Proxies further explicitly stated that "diversity is a factor that is considered in the identification and recommendation of potential director candidates." *Id.*[1] Plaintiff alleges that these and similar statements were materially misleading because, among other things, the Board has never in good faith actively sought African-American candidates and does not consider racial and ethnic diversity when choosing Board nominees. *See, e.g.*, ER-087, 126–127 (¶¶ 105–106, 202).

The complaint alleges that the Board knew that both it and Gap's senior management at all relevant times lacked diversity and that the Company was engaging in unlawful business practices, including

---

[1] Unless otherwise noted, all internal citations and quotation marks are omitted, and all emphasis is added.

discriminatory hiring and compensation practices, that put the Company at material risk. *See, e.g.*, ER-055–56, 067, 073, 090, 110, 125 (¶¶ 11, 52–53, 74, 113, 147–148, 150, 198). In addition, the Board's knowledge is well-supported by the Company's own statistics, which reveal that when the Company does hire African Americans and other minorities, it overwhelmingly hires them for low-level and low-paying jobs in its distribution centers. *See, e.g.*, ER-054, 073–74 (¶¶ 4, 74).

## II.    Gap's Forum-Selection Clause

Gap's unilaterally-adopted forum-selection clause, contained in Gap's amended and restated bylaws, provides as follows:

> Unless the Corporation consents in writing to the selection of an alternative forum, the Court of Chancery of the State of Delaware shall be the sole and exclusive forum for (i) any derivative action or proceeding brought on behalf of the Corporation, (ii) any action or proceeding asserting a claim of breach of a fiduciary duty owed by any director, officer, employee or agent of the Corporation to the Corporation or the Corporation's stockholders, (iii) any action or proceeding asserting a claim against the Corporation arising pursuant to any provision of the Delaware General Corporation Law or the Corporation's Certificate of Incorporation or these Bylaws, or (iv) any action or proceeding asserting a claim against the Corporation governed by the internal affairs doctrine, in each case subject to said Court of Chancery having personal jurisdiction over the indispensable

parties named as defendants therein.

ER-046.  Unlike some other similar clauses, Gap's forum-selection clause does ***not*** provide for an alternative forum (such as a federal court in Delaware) for claims subject to federal courts' exclusive jurisdiction.

## III.    Procedural Background

Plaintiff is a shareholder of Gap and has continuously held Gap shares at all relevant times.  ER-062 (¶ 26); ER-137.  On September 1, 2020, Plaintiff commenced this shareholder derivative action in the court below on behalf of nominal defendant Gap and against certain of its officers and directors. The complaint asserted a claim for violation of Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and SEC Regulation 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9 (together, "Section 14(a) claim") as well as state-law claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, abuse of control, and unjust enrichment.  ER-127–135.

The complaint alleges that demand on the Board would be futile and, thus, is excused because at least a majority of the Board faces a substantial likelihood of liability for knowingly disseminating misleading statements in

the 2019 and 2020 Proxies. *See* ER-123–127 (¶¶ 191–203); *see also Rosenbloom v. Pyott*, 765 F.3d 1137, 1150 (9th Cir. 2014); *In re infoUSA, Inc. S'holders Litig.*, 953 A.2d 963, 990–91 (Del. Ch. 2007) (directors who knowingly disseminate false and misleading statements to shareholders "may be considered to be interested for purposes of demand"); *Shaev v. Baker*, 2017 U.S. Dist. LEXIS 68523, at \*\*51–56 (N.D. Cal. May 4, 2017) (defendants faced substantial likelihood of liability for misleading statements in proxy statements).

On December 7, 2020, Defendants moved to dismiss the complaint under Rules 12(b)(6) and 23.1 and based on the doctrine of *forum non conveniens*. As grounds for dismissal, Defendants argued that: (1) Plaintiff failed to adequately plead demand futility; (2) the complaint should be dismissed on the basis of Gap's forum-selection clause; (3) Plaintiff failed to state a claim for violation of Section 14(a); and (4) Plaintiff's claims were unripe. *See Lee v. Fisher*, No. 3:20-cv-06163-SK, Dkt. No. 48.

The District Court held a hearing on the motion on April 26, 2021. By order dated April 27, 2021, the District Court granted Defendants' motion and dismissed without prejudice all of Plaintiff's claims, including the

Section 14(a) claim, on the basis of *forum non conveniens*. ER-004–12. The District Court entered final judgment on the same day. ER003. On May 24, 2021, Plaintiff filed a timely notice of appeal. ER-138–139.

## SUMMARY OF THE ARGUMENT

The District Court abused its discretion in enforcing Gap's forum-selection clause with regard to Plaintiff's Section 14(a) claim. Under well-settled *forum non conveniens* analysis, a forum-selection clause is unenforceable if it contravenes a strong public policy of the forum, whether expressed in a statute or a judicial decision. Here, the Exchange Act provides that federal courts shall have exclusive jurisdiction over Exchange Act claims. The Exchange Act further provides that any contract or provision waiving any right under the Exchange Act shall be void. As a result, enforcement of Gap's clause as to Plaintiff's Section 14(a) claim would contravene both the exclusive-jurisdiction and anti-waiver provision.

In holding to the contrary, the District Court abused its discretion and relied on inapposite precedent dealing with enforcement of forum-selection clauses in international agreements that were negotiated at arm's length by

11

sophisticated parties or where there was no waiver of any substantive rights.

In addition, the Exchange Act's anti-waiver provisions voids Gap's forum-selection clause to the extent it requires complete dismissal and, thus, waiver of Plaintiff's Section 14(a) claim.

## STANDARD OF REVIEW

This Court reviews the district court's decision to enforce a forum-selection clause for abuse of discretion. *Richards v. Lloyd's of London*, 135 F.3d 1289, 1292 (9th Cir. 1998) (*en banc*). Whether the securities laws void the clause is a question of law that the Court reviews *de novo*. *Id.*

## ARGUMENT

**I.     The Court Should Reverse Because Enforcement of Gap's Forum-Selection Clause as to Plaintiff's Section 14(a) Claim Contravenes Strong Public Policy of the Forum as Expressed in the Exchange Act**

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Gemini Techs., Inc. v. Smith & Wesson Corp.*, 931 F.3d 911, 913 (9th Cir. 2019). In determining whether to enforce a forum-selection clause, the Court looks to the U.S. Supreme Court's seminal decision in *The Bremen v. Zapata Off-*

*Shore Co.*, 407 U.S. 1 (1972). *See Gemini Techs.*, 931 F.3d at 913.

As relevant here, the Supreme Court in *Bremen* held that "[a] contractual choice-of-forum clause should be held unenforceable ***if enforcement would contravene a strong public policy of the forum in which suit is brought***, whether declared by statute or by judicial decision." 407 U.S. at 15. And as this Court recently reaffirmed, "satisfaction of *Bremen*'s public policy factor continues to suffice to render a forum-selection clause unenforceable." *Gemini Techs.*, 931 F.3d a 916 (reversing and remanding where enforcement of the clause would violate Idaho's anti-waiver statute).

Here, the enforcement of Gap's forum-selection clause as to Plaintiff's Section 14(a) claim would contravene strong public policy of federal courts (the forum in which this action is brought) for three reasons.

*First*, enforcement would contravene federal court's exclusive jurisdiction over Section 14(a) claim. It is undisputed that federal courts have ***exclusive jurisdiction*** over Plaintiff's claim for violation of § 14(a) of the Exchange Act. The Exchange Act specifically provides that "[t]he district courts of the United States … shall have exclusive jurisdiction … of all suits

13

in equity and actions at law brought to enforce any liability or duty created by this title or the rules and regulations thereunder." 15 U.S.C. § 78aa(a). It is equally without dispute that the Delaware Court of Chancery (the forum that is specified in Gap's forum-selection clause) does *not* have jurisdiction to adjudicate Plaintiff's Section 14(a) claim. *See, e.g.*, *Cottrell v. Duke*, 737 F.3d 1238, 1245 (8th Cir. 2013) (observing that "Delaware courts have no jurisdiction" to address the plaintiffs' Exchange Act claims); *Butorin v. Blount*, 106 F. Supp. 3d 833, 837 (S.D. Tex. 2015) (observing that Delaware Court of Chancery lacks jurisdiction over plaintiff's § 14(a) claim and, to that extent, denying motion to dismiss for *forum non convenience*).

Notably, neither Delaware nor federal law permits Defendants to enforce the forum-selection clause against Plaintiff's Section 14(a) claim. The Delaware Supreme Court's recent decision in *Salzberg v. Sciabacucchi*, 277 A.3d 102 (Del. 2020), is not to the contrary. There, the court merely held that, under Delaware law, a Delaware corporation can validly adopt a forum-selection clause requiring federal claims to be brought *in federal court*. *See id.* at 120 But that is *not* what is at issue here. Rather, the District Court

14

impermissibly *dismissed* the federal claim based on the forum-selection clause, even though ***there is no way for Plaintiff to assert this claim in Delaware Court of Chancery***. Delaware law does *not* permit this outcome.

This much is clear from former Chief Justice Strine's seminal decision in *Boilermakers Local 154 Retirement Fund v. Chevron Corp.*, 73 A.3d 934 (Del. Ch. 2013). In *Boilermakers*, then-Chancellor Strine upheld, under Delaware law, the facial validity of forum-selection clauses providing that the forum for litigation related to the companies' internal affairs would be the Delaware Court of Chancery. *Id.* at 939–40. In doing so, Chancellor Strine ***specifically observed*** that such a forum-selection clause would *not* be enforceable as to a claim within the federal courts' exclusive jurisdiction:

> In the event that a plaintiff seeking to bring a claim within the exclusive jurisdiction of the federal courts is met with a motion to dismiss because of the forum selection clause, the plaintiff will have the most hospitable forum possible to address the motion by pressing an argument that the bylaw cannot operate to foreclose her suit — a federal court. For example, ***if a claim under SEC Rule 14a-9 was brought against FedEx and its board of directors in federal court and the defendants moved to dismiss because of the forum selection clause, they would have trouble*** … [T]he plaintiff could argue that if the board took the position that the bylaw waived the stockholder's rights under the Securities Exchange Act, ***such a waiver would be inconsistent***

15

*with the antiwaiver provisions of that Act*.

*Id.* at 962.  That is precisely the case here.

*Second*, as Chancellor Strine observed in *Boilermakers*, enforcement of the clause as to the Section 14(a) claim would also violate the Exchange Act's **anti-waiver provision**.  The Exchange Act expressly voids "***[a]ny*** condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this title."  15 U.S.C. § 78cc(a).  As relevant here, allowing for the forum-selection clause to be enforced against Plaintiff's Section 14(a) claim, thereby depriving Plaintiff of ***any*** forum to bring this claim, would amount to a waiver of Plaintiff's Section 14(a) claim and, thus, contravene the Exchange Act's anti-waiver provision, in turn making the clause unenforceable under *Bremen.  See* 407 U.S. at 15; *see also Gemini Techs.*, 931 F.3d a 916 (reversing and remanding where enforcement of the forum-selection clause would violate Idaho's anti-waiver statute).

*Third*, the U.S. Supreme Court has on numerous occasions reaffirmed that a federal court has a "***virtually unflagging***" "***obligation***" to hear and decide cases within its jurisdiction.  *See, e.g., Lexmark Int'l, Inc. v. Static Control*

16

*Components, Inc.*, 572 U.S. 118, 126 (2014); *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013); *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Although pronounced in the context of whether or not to abstain under the so-called "*Colorado River* doctrine," the guidance is clear:

> Federal courts, it was early and famously said, have "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." Jurisdiction existing, this Court has cautioned, a federal court's "obligation" to hear and decide a case is "virtually unflagging."

*Sprint Commc'ns*, 571 U.S. at 77.

As relevant here, in enacting the Exchange Act, Congress made a public policy decision to grant federal courts "exclusive jurisdiction" over all actions brought to enforce any liability or duty under the Exchange Act. *See* 15 U.S.C. § 78aa(a).[2] It did so "motivated by a desire to achieve greater uniformity of construction and more effective and expert application of that law." *See Murphy v. Gallagher*, 761 F.2d 878, 885 (2d Cir. 1985); *see also Cottrell*, 737 F.3d at 1246 ("Congress grants exclusive federal jurisdiction in order to

---

[2] In contrast, claims under the Securities Act of 1933 can be brought in either the state *or* federal court. *See* 15 U.S.C. § 77v(a); *Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 138 S. Ct. 1061, 1066, 1069, 1078 (2018).

cultivate uniformity and expertise, and sometimes to ensure the use of more liberal federal procedural protections."). Indeed, as the Eighth Circuit observed, Congress "deliberately decided to vest federal courts with exclusive jurisdiction to adjudicate [Exchange Act] claims, *claims that frequently arise in the derivative setting*." *See Cottrell*, 737 F.3d at 1248.

Under *Bremen* and this Court's recent decision in *Gemini Technologies*, this federal policy — as reflected in both the statute (Exchange Act) *and* federal court decisions interpreting it — is sufficient, by itself, to find that Gap's forum-selection clause is ***not*** enforceable as to Plaintiff's Section 14(a) claim. *See Bremen*, 407 U.S. at 15 ("[a] contractual choice-of-forum clause should be held unenforceable ***if enforcement would contravene a strong public policy of the forum in which suit is brought***, whether declared by statute or by judicial decision"); *Gemini Techs.*, 931 F.3d a 916 ("satisfaction of *Bremen*'s public policy factor continues to suffice to render a forum-selection clause unenforceable") (reversing and remanding where enforcement of the clause would violate Idaho's anti-waiver statute).

/ / /

18

**II.    In Enforcing Gap's Forum-Selection Clause as to Plaintiff's Section 14(a) Claim, the District Court Misconstrued Precedent Dealing with Enforcement of Forum-Selection Clauses in International Agreements Negotiated by Sophisticated Parties or in a Context Where There Was No Waiver of Substantive Rights**

Despite paying lip service to the Exchange Act's exclusive-jurisdiction and anti-waiver provisions (*see, e.g.*, ER-007–8), the District Court essentially ignored those provisions and, instead, erroneously relied on inapposite precedent dealing with enforcement of forum-selection clauses in international agreements negotiated by sophisticated parties or in a context where there was no actual waiver of substantive rights.  In doing so, the District Court abused its discretion, requiring reversal.

**A.    *Richards***

For example, in concluding that it could enforce the clause despite the indisputable dismissal and, thus, waiver of Plaintiff's Section 14(a) claim in violation of the Exchange Act's anti-waiver provision, the District Court relied on this Court's decision in *Richards*, 135 F.3d 1289.  But a close review of the facts in *Richards*, as well as the law that the Court in that case applied, reveals that the District Court's reliance on it was in error.

19

Specifically, *Richards* involved a forum-selection clause in an international agreement that was negotiated at arm's length by sophisticated parties. The agreement was between "Names" (persons or entities who provide underwriting capital) and certain Lloyd's entities. *Id.* at 1291–92. As the opinion explains, the process to become a "Name" requires, among other things, that the person provide "proof of financial means," deposit "an irrevocable letter of credit in favor of Lloyd's," and "travel to England to acknowledge the attendant risks of participating in a syndicate and sign a General Undertaking." *Id.* at 1292. Thus, the entire process and resulting agreements are negotiated and executed at arm's length by highly sophisticated parties. Here, in contrast, Gap's shareholders had no say in the drafting and adoption of Gap's forum-selection clause, nor was the clause a result of arm's-length negotiations between sophisticated parties.

In *Richards*, after the Names suffered heavy losses, they attempted to sue the Lloyd's entities in California in contravention to the negotiated forum-selection clause in the underwriting agreements, which required all disputes to be brought in the courts of England. *See id.* at 1291–92. In

20

enforcing the clause, this Court relied heavily on case law dealing with enforcement of forum-selection clauses *in international agreements* and repeatedly emphasized that principles of *international comity* were at play.

Indeed, the opinion starts with the Court explicitly framing the "***primary*** question" in that case as "whether the antiwaiver provisions of the Securities Act of 1933 and the Securities Exchange Act of 1934 void choice of law and choice of forum clauses ***in an international transaction***." *Id.* at 1291. Throughout the rest of the opinion, the Court makes clear that the "international" scope of the transaction played a key role in its decision to enforce the clause. *See, e.g., id.* at 1293 (discussing Supreme Court's precedent that "courts should enforce choice of law and choice of forum clauses in cases of ***freely negotiated private international agreements***"); *id.* at 1293–94 ("We agree with the Fifth Circuit that 'we must tread cautiously before expanding the operation of U.S. securities law ***in the international arena***."); *id.* at 1294 ("we turn to the question whether the contract between Lloyd's and the Names ***is international***"); *id.* ("Entering into the Lloyd's market in the manner described ***is plainly an international transaction***.");

21

*id.* ("the elimination of all uncertainties regarding the forum by agreeing in advance . . . is an indispensable element *in international trade, commerce, and contracting*"); *id.* at 1295 ("Moreover, the Supreme Court has explained that, *in the context of an international agreement*, there is 'no basis for a judgment that only United States laws and United States courts should determine this controversy in the face of a solemn agreement between the parties that such controversies be resolved elsewhere.'").

Thus, when properly viewed in light of its specific facts as well as the case law that the Court was applying, *Richards* stands only for the proposition that where sophisticated parties negotiate a truly international agreement at arm's length, whereby they agree to resolve all of their disputes in a specific forum, principles of international comity and certainty require that the court enforce such freely negotiated clause, even if it would require the plaintiff to forego a substantive right that it might have. When properly viewed in this manner, it is clear that *Richards* provides no support to Defendants in this case. Unlike in *Richards*, this action does *not* involve an international transactions and the forum-selection clause was not negotiated

at arm's length by sophisticated parties. Rather, this action involves Plaintiff's domestic purchase of Gap's shares and subsequent Proxy statements filed with the SEC that Plaintiff alleges omitted material information. Under these facts, there are no principles of international comity or certainty that would require the Court to disregard the clear mandate of the Exchange Act's anti-waiver provision.

**B.** *Advanced China Healthcare*

In enforcing Gap's forum-selection clause, the District Court also purported to rely on this Court's decision in *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081 (9th Cir. 2018) ("*Advanced China Healthcare*"). *See* ER-008, 010. That reliance was also in error. To begin with, *Advanced China Healthcare*, similar to *Richards*, involved a forum-selection clause in agreements negotiated at arm's length by sophisticated parties. *See* 901 F.3d at 1084–85. In contrast, here, the forum-selection clause is located in the Company's bylaws and was unilaterally adopted by Defendants.

More importantly, *Advanced China Healthcare* is inapposite because in that case, the enforcement of the clause did ***not*** result in the waiver of any

substantive rights. Specifically, the plaintiffs (who invested $2.8 million in Advanced China Healthcare) brought suit against defendants under Washington securities law in Washington. *Id.* Defendant moved to dismiss on the basis of a forum-selection clause that required the dispute to be resolved in California. *Id.* at 1085. The district court granted the motion but conditioned the dismissal on several requirements, including that defendant "could not argue that California securities laws do not apply to the disputed transaction." *Id.* at 1085–86. Moreover, before this Court, defendant's counsel also "committed to refraining from raising any argument" that Washington securities laws were inapplicable in California. *Id.* at 1092.

In enforcing the clause in *Advanced China Healthcare*, this Court specifically observed that plaintiffs in that case "will have an opportunity to pursue both their Washington and California securities claims without opposition from the defendant." *Id.* Here, in contrast, in light of federal courts' exclusive jurisdiction over Exchange Act claims, the District Court's enforcement of Gap's forum-selection clause means that Plaintiff will have *no opportunity at all* to have her Section 14(a) claim adjudicated on the

24

merits.  *See* 15 U.S.C. § 78aa(a); *Cottrell*, 737 F.3d at 1245 (observing that "Delaware courts have no jurisdiction" to address the plaintiffs' Exchange Act claims); *see also* ER-010 (acknowledging that "it is undisputed that Plaintiff would be precluded from pursuing the Section 14(a) claim if the Court enforces the forum-selection clause because federal courts have exclusive jurisdiction over Section 14(a) claim and that, in effect Section 14(a) would be waived if the Court enforce the forum selection clause").

\*   \*   \*

In sum, the District Court abused its discretion in relying upon this Court's inapposite decisions in *Richards* and *Advanced China Healthcare*.  In fact, the District Court did not even attempt to address all of the serious concerns raised by Plaintiff with regard to the limited scope of those decisions.  Completely absent from the court's decision is ***any*** attempt to address the fact that *Richards* involved a truly international agreement that was negotiated at arm's length by sophisticated parties or that *Advanced China Healthcare* did not result in any waiver of substantive rights.  Instead, the District Court accepted, without question, Defendants' broad reading of

25

those decisions and disregarded Plaintiff's arguments to the contrary.

### C.     The Availability of Alternative Remedies Is Irrelevant

The District Court also observed that Plaintiff's discussion with regard to sufficiency and availability of alternative remedies in Delaware Court of Chancery (which was offered solely in response to Defendants' argument in that regard) was "unhelpful" and that Plaintiff failed to demonstrate that "she would have no remedy in the Delaware Court of Chancery." *See* ER-010–011. This, however, is a red herring.

The availability of alternative remedies is ***irrelevant*** where the plaintiff demonstrates that enforcement of the clause would contravene strong public policy of the forum. Rather, as this Court recently reaffirmed in *Gemini Technologies* — decided after *Advanced China Healthcare*, "satisfaction of *Bremen*'s public policy factor continues to suffice to render a forum-selection clause unenforceable." *See* 931 F.3d at 916. Here, as discussed above, Plaintiff has demonstrated that enforcement of Gap's clause would contravene strong public policy of the federal courts as expressed in the Exchange Act and judicial decisions interpreting it. If the Court agrees, the

availability of sufficient alternative remedies is irrelevant and the clause must be held unenforceable under *Bremen* and *Gemini Technologies*.

In any event, as numerous courts have observed, a claim for violation of Section 14(a) is ***not*** the same as a claim for nondisclosure under Delaware law. *See Cottrell*, 737 F.3d at 1245 ("the Delaware proxy-misrepresentation claim will require a showing of bad faith, unlike the negligence standard that applies to the [Exchange Act] proxy-misrepresentation claim"); *see also Oakland Cnty. Emps. Ret. Sys. v. Massaro*, 702 F. Supp. 2d 1012, 1019 (N.D. Ill. 2010) (observing that "defendants have not convincingly demonstrated that the plaintiffs' section 14(a) claim is indeed duplicative of, or encompassed by," causes of action available under Delaware law). The Section 14(a) claim is also based on a ***negligence standard***, while duty-of-disclosure claims under Delaware law must show that a director acted at a more culpable standard — in bad faith — for liability to incur. *See Cottrell*, 737 F.3d at 1245.

Moreover, under § 102(b)(7) of the DGCL, a Delaware corporation can eliminate directors' monetary liability if they act negligently under Delaware law. Federal securities claims, however, are ***not*** subject to exculpation under

27

§ 102(b)(7) provisions. *See* 8 DEL. C. § 102(b)(7) ("eliminating or limiting the personal liability of a director to the corporation or its stockholders for monetary damages ***for breach of fiduciary duty*** as a director").

### III. The Exchange Act's Anti-Waiver Provision Voids Gap's Forum-Selection Clause to the Extent It Requires the Dismissal and, Thus, Waiver of Plaintiff's Section 14(a) Claim

Section 29 of the Exchange Act unequivocally provides that "***[a]ny*** condition, stipulation, or provision binding any person to waive compliance with any provision of this title or of any rule or regulation thereunder, or of any rule of a self-regulatory organization, ***shall be void***." 15 U.S.C. § 78cc(a). Here, it is undisputed — and the District Court acknowledged — that enforcement of Gap's forum-selection clause in full would completely deprive Plaintiff of ***any*** forum to pursue her Section 14(a) claim. *See* ER–010; *see also Cottrell*, 737 F.3d at 1245. Under plain language of Section 29 of the Exchange Act, such clause "shall be void." *See* 15 U.S.C. § 78cc(a).

Indeed, as the Supreme Court has observed, any clause that purports to prospectively waive "a party's right to pursue statutory remedies" is inherently suspect and against public policy. *See, e.g., Vimar Seguros Y*

*Reaseguros v. M/V Sky Reefer*, 515 U.S. 528, 540 (1995) ("were we persuaded that the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies, we would have little hesitation in condemning the agreement as against public policy"); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 637 n.19 (1985) ("We merely note that in the event the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy."). That is particularly so where, as here, the clause purports to waive statutory rights guaranteed to shareholders under the Exchange Act — rights that Congress decreed must be pursued exclusively in federal court and cannot be waived. *See* 15 U.S.C. §§ 78aa(a), 78cc(a).

## CONCLUSION

For all the foregoing reasons, the Court should reverse the dismissal of Plaintiff's Section 14(a) claim and remand for further proceedings.

/ / /

29

Dated:  October 7, 2021        Respectfully submitted,

BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr.
Yury A. Kolesnikov

_____*s/ Yury A. Kolesnikov*_____
Yury A. Kolesnikov

7817 Ivanhoe Avenue, Suite 102
La Jolla, California  92037
Telephone:   (858) 914-2001
Facsimile:    (858) 914-2002

*Attorneys for Plaintiff-Appellant*

30

# CERTIFICATE OF COMPLIANCE

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** __21-15923_____

I am the attorney or self-represented party.

**This brief contains** __5,483_____ **words,** excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[**x**] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5),
    Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** ___*s/ Yury A. Kolesnikov*_____ **Date** ____October 7, 2021____
*(use "*s/[typed name]*" to sign electronically-filed documents)*

**CERTIFICATE OF SERVICE**

I certify that, on October 7, 2021, I caused the foregoing Appellant's Opening Brief to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 7th day of October 2021, at La Jolla, California.

_____*s/ Yury A. Kolesnikov*_____
Yury A. Kolesnikov

32