No. 21-15923

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**
————————————————————

NOELLE LEE,
derivatively on behalf of THE GAP, INC.,

*Plaintiff-Appellant,*

vs.

ROBERT J. FISHER, *et al.,*

*Defendants-Appellees,*

– and –

THE GAP, INC.,

*Nominal Defendant-Appellee.*

————————————————————

On Appeal from the United States District Court
For the Northern District of California
The Honorable Sallie Kim
District Court Case 3:20-cv-06163-SK

————————————————

**PETITION FOR REHEARING *EN BANC* BY THE FULL COURT**
————————————————

BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr.
Yury A. Kolesnikov
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001
Facsimile: (858) 914-2002

*Attorneys for Plaintiff-Appellant Noelle Lee*

Dated: June 29, 2023

# Table of Contents

PRELIMINARY STATEMENT ..............................................................................1

RELEVANT FACTS AND PROCEEDINGS .......................................................4

    I.    Factual Background .........................................................................4

    II.   Forum-Selection Clause ..................................................................5

    III.  Procedural Background ...................................................................5

    IV.  Appeal .............................................................................................6

ARGUMENT ...................................................................................................8

    I.    Full Court Rehearing Is Necessary Because the Opinion
        Dismantles the Exchange Act's Anti-Waiver Provision,
        Leaving Shareholders Without *Any* Forum in Which to
        Bring *Derivative* § 14(a) Claims .......................................................8

    II.   Full Court Rehearing Is Necessary Because the Opinion
        Fails to Adhere to the *Bremen* Framework and Refuses to
        Follow *Borak* ...................................................................................15

    III.  Full Court Review Is Necessary Because the Opinion
        Clashes with the Seventh Circuit's *Seafarers* Decision and
        Allows Companies to Immunize Themselves from
        Exclusively-Federal Statutory Claims ............................................18

CONCLUSION ...............................................................................................20

CERTIFICATE OF COMPLIANCE ...................................................................22

CERTIFICATE OF SERVICE ............................................................................23

# Table of Authorities

## Cases

*Cannon v. Univ. of Chicago,*
 441 U.S. 677 (1979) ...................................................................11

*Cottrell v. Duke,*
 737 F.3d 1238 (8th Cir. 2013)....................................................15

*Gemini Techs., Inc. v. Smith & Wesson Corp.,*
 931 F.3d 911 (9th Cir. 2019).......................................................16

*Grimes v. Donald,*
 673 A.2d 1207 (Del. 1996)...........................................................14

*Herman & Maclean v. Huddleston,*
 459 U.S. 375 (1983) ............................................................... 8, 10

*Hohn v. United States,*
 524 U.S. 236 (1998) ...................................................................17

*J. I. Case Co. v. Borak,*
 377 U.S. 426 (1964) ............................................... 1, 2, 5, 8, 11, 13

*Kamen v. Kemper Fin. Servs.,*
 500 U.S. 90 (1991) ......................................................... 12, 13, 20

*Mallory v. Norfolk S. Ry. Co.,*
 266 A.3d 542 (Pa. 2021)..............................................................17

*Mallory v. Norfolk S. Ry.,*
 600 U.S. ___, 2023 U.S. LEXIS 2786 (June 27, 2023).................... 3, 17, 18

*Mills v. Electric Auto-Lite Co.,*
 396 U.S. 375 (1970) ............................................................. 10, 17

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,*
  473 U.S. 614 (1985) .......................................................... 10, 11, 16

*Rodriguez de Quijas v. Shearson/American Express, Inc.,*
  490 U.S. 477 (1989) ................................................................. 3, 11

*Ross v. Bernhard,*
  396 U.S. 531 (1970) ...................................................................12

*Seafarers Pension Plan v. Bradway,*
  23 F.4th 714 (7th Cir. 2022) ...................................... 1, 15, 19, 20

*Shearson/American Express v. McMahon,*
  482 U.S. 220 (1987) ...................................................... 10, 11, 13

*State Oil Co. v. Khan,*
  522 U.S. 3 (1997) .......................................................................17

*The Bremen v. Zapata Off-Shore Co.,*
  407 U.S. 1 (1972) .......................................................................15

*Tooley v. Donaldson, Lufkin, & Jenrette, Inc.,*
  845 A.2d 1031 (Del. 2004) ........................................................12

*United States v. Rutherford,*
  442 U.S. 544 (1979) ................................................................. 9, 16

*United States v. Temple,*
  105 U.S. 97 (1882) .......................................................................9

*Va. Bankshares v. Sandberg,*
  501 U.S. 1083 (1991) .................................................................17

*Viking River Cruises, Inc. v. Moriana,*
  142 S. Ct. 1906 (2022) ...............................................................11

## Statutes

15 U.S.C. § 78n(a) .................................................................5

15 U.S.C. § 78aa(a) ...............................................................5, 8

15 U.S.C. § 78cc(a) ................................................................8

## Regulations

17 C.F.R. § 240.14a-9 .............................................................5

## Rules

FED. R. APP. P. 35(b)(1)(A)................................................. 1, 18

FED. R. APP. P. 35(b)(1)(B) ...................................................1

9TH CIR. R. 35-1 ............................................................... 1, 19

9TH CIR. R. 35-3.................................................................1

## General Orders

9TH CIR. GEN. ORDER 5.8 .....................................................1

## Other Authorities

Pamela Ann Rymer,
   *The "Limited" En Banc: Half Full, or Half Empty?*,
   48 ARIZ. L. REV. 317 (2006) .............................................3

# PRELIMINARY STATEMENT

"In appropriate cases, the Court may order a rehearing by the full court following a hearing or rehearing *en banc*." 9TH CIR. R. 35-3; *see also* 9TH CIR. GEN. ORDER 5.8. This is such a case.

In a split 6-5 decision, the *en banc* panel affirmed the dismissal of Plaintiff's derivative § 14(a) claim on *forum non conveniens* grounds and, thereby, foreclosed the only authorized forum for shareholders to bring such a claim. In the process, the majority (1) fashioned an exception to the Exchange Act's anti-waiver provision that does not exist in the statutory language and is contrary to precedent; (2) willfully disregarded the Supreme Court's on-point holding in *J. I. Case Co. v. Borak*, 377 U.S. 426 (1964); (3) created a conflict with an authoritative decision from the Seventh Circuit;[1] and (4) established bad law on an issue of great national importance. Each of these grounds, individually, necessitates review by the full Court. FED. R. APP. P. 35(b)(1)(A)–(B); 9TH CIR. R. 35-1. Taken together, they mandate it.

---

[1] *Seafarers Pension Plan v. Bradway*, 23 F.4th 714 (7th Cir. 2022). Citations and quotation marks are omitted, and emphasis is added.

Full Court review is particularly important because the six-judge majority's sweeping decision is untethered to precedent.

The majority holds that the forum-selection clause's evisceration of shareholders' right to bring a *derivative* claim for violation of § 14(a) of the Exchange Act of 1934 ("Exchange Act" or the "Act") does not amount to a waiver under § 29(a) of the Act because shareholders purportedly can enforce any violations of § 14(a) through a *direct* action. Ex. A at 13–22. This argument, however, finds no support in the statutory language. It ignores the fact that direct and derivative actions redress different wrongs and, thus, are not interchangeable. And it runs afoul of Supreme Court precedent that forum clauses regulate *where*—not *whether*—a claim can be brought.

The majority also refuses to follow the Supreme Court's on-point holding in *Borak*—which held that there is a derivative implied right of action under § 14(a)—based on its subjective conclusion that *Borak* was "not well-explained or well-reasoned" and purportedly "undermine[d]" by subsequent developments in Supreme Court jurisprudence. Ex. A at 28–34. This recalcitrance runs counter to the well-settled principle that this Court—

even when sitting *en banc*—is not free to disregard on-point Supreme Court precedent. *See Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989). Indeed, ***just two days ago***, the Supreme Court reaffirmed this principle, chastising the Pennsylvania Supreme Court for assuming that intervening decisions from the U.S. Supreme Court had "implicitly overruled" prior U.S. Supreme Court precedent. *See Mallory v. Norfolk S. Ry.*, 600 U.S. ___, 2023 U.S. LEXIS 2786, at **18–19 (June 27, 2023).

Finally, given the initial vote by the majority of the active judges on the Court to review this case *en banc* and the subsequent split 6-5 decision, review by the full Court is fundamental to securing uniformity in the Ninth Circuit and to ensure that the six-judge decision does not set erroneous precedent for the Court as a whole. *See* Pamela Ann Rymer, *The "Limited"* En Banc: *Half Full, or Half Empty?*, 48 ARIZ. L. REV. 317, 323 (2006) (observing how the limited *en banc* court suffers from "built-in shortcomings that curtail the unifying and stabilizing functions of true, full-bench review"); *see also Abebe v. Holder*, 577 F.3d 1113, 1114 (9th Cir. 2009) (Berzon, J., dissenting from denial of full court rehearing) ("the partial court *en banc* process depends

3

upon *en banc* panels … taking heed of the ramifications of their decisions for broad, unrelated areas of law"); *Compassion in Dying v. Wash.*, 85 F.3d 1440, 1440–41 (9th Cir. 1996) (O'Scannlain, J., dissenting from order rejecting request for rehearing *en banc* by the full court) ("a solemn and sweeping declaration, particularly when it strikes down the existing statutes … , should not be undertaken without the express approval of a majority of the members of this court") ("public's confidence … is at stake" when only eight judges signed on to the Court's nullification of existing statutes).

## RELEVANT FACTS AND PROCEEDINGS

### I.  Factual Background

Gap is a Delaware corporation headquartered in San Francisco.  As a publicly-traded company subject to federal securities laws, Gap files reports with the SEC, including annual proxy statements.

This derivative action stems from Defendants' false and misleading statements in Gap's 2019 and 2020 proxy statements regarding Gap's commitments to diversity on the Board and in management.

## II.    Forum-Selection Clause

Gap's forum clause designates the Delaware Court of Chancery as the exclusive forum for "*any* derivative action or proceeding brought on behalf of the Corporation."  ER-046.  Unlike other similar clauses, Gap's clause does *not* provide for an alternative forum (such as a federal court in Delaware) for claims subject to exclusive federal jurisdiction.

## III.    Procedural Background

Section 14(a) and its implementing regulation, SEC Rule 14a-9, prohibit material misstatements and omissions in proxy statements.  15 U.S.C. § 78n(a); 17 C.F.R. § 240.14a-9.  "The purpose of § 14(a) is to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation."  *Borak*, 377 U.S. at 431.  Shareholders have a private right of action to prosecute both a direct and a derivative § 14(a) claim.  *Id.* at 432–33.   Federal courts have exclusive jurisdiction over such claims.  15 U.S.C. § 78aa(a).

Plaintiff, a Gap shareholder, commenced this derivative action on behalf of Gap and against certain of its officers and directors.  The complaint

alleges a § 14(a) claim and several state-law claims. *See* ER-47–137.

Without reaching the merits, the court dismissed all of Plaintiff's claims, including the § 14(a) claim, on the basis of Gap's forum clause.

## IV. Appeal

Plaintiff appealed only from the dismissal of her § 14(a) claim, arguing that Gap's clause was (1) invalid because it deprived her of any forum in which to bring the derivative § 14(a) claim in contravention of the Exchange Act's anti-waiver provision; (2) unenforceable because it violated the public policy of the federal forum as set forth in the Act's anti-waiver and exclusive-jurisdiction provisions and *Borak*; and (3) invalid under Delaware law.

After a three-judge panel affirmed, Plaintiff petitioned for a rehearing *en banc*. A majority of non-recused active judges voted to grant *en banc* rehearing. Dkt. No. 55.

On June 1, 2023, the *en banc* panel issued a split 6-5 decision affirming the dismissal of Plaintiff's derivative § 14(a) claim. Ex. A. The six-judge majority found Gap's clause to be valid and not void under § 29(a) because Plaintiff could still enforce § 14(a) through a direct action. *Id.* at 13–22. It

concluded that enforcement of the clause did not violate public policy.  *Id.* at 23–35.  And it found the clause to be valid under Delaware law.  *Id.* at 39–49.

The majority refused to follow *Borak*, criticizing it as lacking reasoning and explanation and concluding that it was undermined by subsequent developments in Supreme Court jurisprudence.  *Id.* at 28–34.  As a result, it concluded that *Borak* "does not establish a strong public policy" allowing shareholders to bring derivative § 14(a) claims.  *Id.* at 25, 29, 35.  Going further, it expressed "grave doubt" as to whether "a shareholder can [even] bring a derivative § 14(a) claim on behalf of a corporation."  *Id.* at 34 & n.15.

Judge S.R. Thomas, joined by Chief Judge Murguia and Judges Nguyen, Friedland, and Mendoza, dissented.  Ex. A at 56–71.  The dissent correctly observed that the majority's opinion renders Gap's bylaw "a litigation bridge to nowhere," depriving shareholders of ***any*** forum in which to pursue derivative § 14(a) claims.  *Id.* at 56.  The dissent found clear waiver under § 29(a) because Gap's clause "does not merely 'weaken' the substantive right to recover under the Act, but eliminates it altogether."  *Id.* at 58.  And it decried the majority's treatment of *Borak*.  *Id.* at 70.

# ARGUMENT

I. **Full Court Rehearing Is Necessary Because the Opinion Dismantles the Exchange Act's Anti-Waiver Provision, Leaving Shareholders Without *Any* Forum in Which to Bring *Derivative* § 14(a) Claims**

Congress passed the Exchange Act in the wake of the disastrous 1929 stock market crash and in response to widespread abuses in the securities industry. To ensure compliance, the Act creates an extensive scheme of civil liability, which includes both *express* private rights of action and private rights of action that courts have found to be *implied* by the terms of the Act, including under § 10(b) and § 14(a). *See Herman & Maclean v. Huddleston*, 459 U.S. 375, 380 & nn.9–10 (1983); *Borak*, 377 U.S. at 432. Congress also endowed federal courts with exclusive jurisdiction over violations of the Act (15 U.S.C. § 78aa(a)) and mandated that "any" attempt to waive compliance with "***any*** provision" of the Act "***shall be void***" (*id.* § 78cc(a)).

Section 29(a) of the Act—the "anti-waiver" provision—means what it says. It provides for no exceptions and does not permit waiver where alternative remedies are available. But that is precisely the construction that the majority gives § 29(a). It acknowledges that enforcement of Gap's clause

8

would preclude Plaintiff "from bringing a derivative § 14(a) action in ***any*** forum." Ex. A at 15. And yet, according to the majority, there is ***no*** waiver because Plaintiff "can enforce Gap's compliance with the substantive obligations of § 14(a) by bringing a direct action in federal court." *Id.*

The majority's "availability of a direct action" exception to § 29(a) disregards the statutory language. As Judge Thomas observed, "[t]he statute does ***not*** include the qualification 'unless there are alternate remedies available.'" *Id.* at 59. When the statutory language is plain, courts "have no right to insert words and phrases, so as to incorporate in the statute a new and distinct provision." *United States v. Temple*, 105 U.S. 97, 99 (1882); *see also United States v. Rutherford*, 442 U.S. 544, 554–55 (1979) ("federal courts do not sit as councils of revision, empowered to rewrite legislation in accord with their own conceptions of prudent public policy").

The majority's judicially-created exception also runs afoul of precedent. The Supreme Court has ***never*** endorsed a complete waiver of federal statutory rights just because alternative remedies are available. On the contrary, it has stated that in the event a forum clause operated "as a

prospective waiver of a party's right to pursue statutory remedies," it "would have little hesitation in condemning the agreement." *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 637 n.19 (1985).[2]

*Shearson/American Express v. McMahon*, 482 U.S. 220 (1987), relied upon by the majority, is not to the contrary. In *McMahon*, the Supreme Court considered whether an arbitration clause in a bilateral brokerage agreement amounted to a "waiver" under § 29(a) because it required the plaintiffs to bring their Exchange Act claims in arbitration. *Id.* at 222–23, 227. Balancing the Exchange Act against the Federal Arbitration Act, the Court concluded that the clause did not violate § 29(a) because the plaintiffs ***retained the right to assert their Exchange Act claims in arbitration***. *See id.* at 229, 232.

*McMahon* is consistent with Supreme Court precedent that forum and arbitration clauses are valid because—and only to the extent that—they

---

[2] *Cf. Huddleston*, 459 U.S. at 381–83 (a party was not barred from invoking an implied right of action under § 10(b) even though the same misconduct was also actionable under § 11 of the Securities Act because the two provisions "were intended to address different types of wrongdoing"); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 390–91 (1970) (the existence of express provisions for recovery of attorneys' fees in § 9(e) and § 18(a) of the Exchange Act did not preclude an award of fees under § 14(a) of the Act).

regulate *where* a claim can be brought, not *whether* it can be brought.[3]

That is not the case here. The majority concedes that enforcement of Gap's clause precludes Plaintiff from bringing the derivative § 14(a) claim in *any* forum. Ex. A at 15. "[U]nder *McMahon*, such a bylaw violates Section 29(a) because the specified forum is 'inadequate to enforce the statutory rights created by the Act.'" *Id.* at 64 (Thomas, J., dissenting) (quoting *McMahon*, 482 U.S. at 228–29). As Judge Thomas aptly observed, "[t]he fact that the forum-selection clause eviscerates derivative actions should end the analysis under the Exchange Act's antiwaiver provision." *Id.* at 58.[4]

---

[3] *See Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1919 (2022) ("by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral forum"); *McMahon*, 482 U.S. at 229, 232, 240 (no waiver "so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitration forum"); *Rodriguez*, 490 U.S. at 486 (same).

[4] Notably, the resulting waiver is one of "compliance." *Borak* implied a private right of action precisely because the substantive rights are inextricably intertwined with the right to judicial enforcement. *See* 377 U.S. at 431–34; *see also Mitsubishi*, 473 U.S. at 635 (observing that "the private cause of action plays a central role in enforcing" the statutory regime); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 703 & n.35 (1979) (the Court implies a private right of action when "necessary or at least helpful to the accomplishment of the statutory purpose" and citing *Borak* as an example).

The majority's conclusion that a direct action is a viable alternative to a derivative action is also contrary to Supreme Court and Delaware law. Equity created the derivative form of action in response to the common law's refusal "to permit stockholders to call corporate managers to account in actions at law." *Ross v. Bernhard*, 396 U.S. 531, 534 (1970). "Devised as a suit in equity," its purpose was "to place in the hands of the individual shareholder a means to protect **the interests of the corporation** from the misfeasance and malfeasance of faithless directors and managers." *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 95 (1991).

The primary difference is in *who* suffered the harm and *who* will receive any recovery. Thus, a shareholder suing directly seeks redress "for injuries affecting his or her legal rights as a stockholder" and any recovery "flows directly to the stockholders." *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1036 (Del. 2004). In contrast, a shareholder suing derivatively "bring[s] suit on behalf of the corporation **for harm due to the corporation**" and "the recovery, if any, flows only to the corporation." *Id.*

In trying to justify its outlier conclusion, the majority goes to great

length in explaining why, on the facts here, it believes Plaintiff has a direct claim. Ex. A at 15–18. But that is irrelevant. Even assuming Plaintiff can bring a direct § 14(a) claim, any recovery would go to shareholders, *not* the company. Any such lawsuit would *not* benefit Gap or redress *the harm done to Gap* as a result of "the misfeasance and malfeasance of faithless directors and managers." *See Kamen*, 500 U.S. at 95. Thus, far from just "weaken[ing]" the company's ability to recover under § 14(a), Gap's clause eviscerates *any* ability by Gap to recover for the harm done to it—which is more than sufficient to void it under § 29(a). *See McMahon*, 482 U.S. at 230–31.

This is precisely why, in *Borak*, the Supreme Court concluded that the existence of a derivative § 14(a) cause of action was vital to the "effective … enforcement" of the Act's proxy requirements. 377 U.S. at 431–32. As the Supreme Court cogently observed, because proxy law violations typically harm the company as a whole, rather than shareholders individually, "[t]o hold that derivative actions are not within the sweep of the section *would … be tantamount to a denial of private relief*." *Id.* at 432.

Worse, the majority's opinion sweeps significantly broader than the

facts of this case.  It suggests that shareholders can ***never*** bring a derivative cause of action for § 14(a) violations.  Ex. A at 31, 34–35, & n.15.  This holding is not only contrary to *Borak*, *see id.* at 61 n.1 (Thomas, J., dissenting), but it ignores the reality that certain proxy law violations may only harm the company without inflicting much, if any, harm on the shareholders individually.[5]  It also ignores the fact that without a derivative action, there may not be ***any*** avenue to redress the harm done to the company where the insiders are not willing to sue themselves.  The majority forecloses all such future suits in one broad stroke.  *See, e.g.*, Dkt. No. 66 at 9–10, 28–29 (discussing several derivative settlements that provided substantial value to the companies on whose behalf they were brought).  It also paves the way for companies to defeat other derivative statutory claims—such as under § 10(b) or the Sherman Act—as long as a direct cause of action exists.

---

[5] The majority also incorrectly assumes that because Plaintiff's claim is direct, it cannot also be derivative.  But "[c]ourts have long recognized that the same set of facts can give rise both to a direct claim and a derivative claim." *Grimes v. Donald*, 673 A.2d 1207, 1212–13 (Del. 1996) (citing *Borak*), *disapproved on other grounds in Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).

Full Court review is thus necessary to align the Ninth Circuit with precedent—and practical reality—that the availability of one statutory claim does not permit an evisceration of another statutory claim meant to redress a different type of wrong and that any such waiver clearly violates the Exchange Act's anti-waiver provision.

## II. Full Court Rehearing Is Necessary Because the Opinion Fails to Adhere to the *Bremen* Framework and Refuses to Follow *Borak*

A forum clause is unenforceable if "enforcement would contravene *a strong public policy of the forum* in which suit is brought, whether declared by statute or by judicial decision." *See The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). Here, enforcement would contravene a strong public policy of the federal forum as declared in §§ 27(a) and 29(a) as well as in *Borak*.

With regard to § 29(a), as the Seventh Circuit observed, "[n]on-waiver is woven into the public policy of the federal securities laws." *Seafarers*, 23 F.4th at 727. Congress's grant of exclusive jurisdiction in § 27(a) similarly demonstrates a public-policy determination. *Cottrell v. Duke*, 737 F.3d 1238, 1248 (8th Cir. 2013) (Congress "deliberately decided to vest federal courts with exclusive jurisdiction" to adjudicate Exchange Act claims—"claims that

frequently arise *in the derivative setting*").  A clause that purports to override these express statutory provisions fails as being "against public policy."  *See Mitsubishi*, 473 U.S. at 637 n.19; *see also Rutherford*, 442 U.S. at 555 ("we have no license to depart from the plain language of the [statute]").[6]

The majority also treats *Borak* as second-class precedent.  *Borak*, we are told, "is unsupported by reasoning or explanation" and does "not square with the Supreme Court's jurisprudence regarding derivative actions."  Ex. A at 26, 28.  It has purportedly been "undermine[d]" by developments in Supreme Court jurisprudence and, to boot, been "displaced" and "supersede[d]" by Delaware law.  *Id.* at 29–31.  All told, according to the majority, given the "shift" by the Supreme Court in how it implies a private right of action, *Borak* is no longer good law.  *Id.* at 32–34.

But this Court is duty-bound to follow Supreme Court precedent,

_____

[6] As the five-judge dissent observes, the enforceability of a forum clause in the face of an express statutory anti-waiver provision **cannot** be based "on the ***contrived distinction***" that one statute uses the words "public policy" while another does not.  *See* Ex. A at 68; *compare Gemini Techs., Inc. v. Smith & Wesson Corp.*, 931 F.3d 911, 916 (9th Cir. 2019) (reversing and remanding because enforcement of the clause would violate Idaho's anti-waiver statute that specifically used the words "public policy").

"regardless of whether subsequent cases have raised doubts about [its] continuing vitality," *Hohn v. United States*, 524 U.S. 236, 252–53 (1998), and regardless of any purported "infirmities" or even "increasingly wobbly, moth-eaten foundations," *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997).[7]

The Supreme Court reaffirmed this principle just this Term in *Mallory*, 2023 U.S. LEXIS 2786. There, the Pennsylvania Supreme Court refused to follow the U.S. Supreme Court's century-old precedent because it was "decided during the *Pennoyer* era, when courts applied a territorial approach to general jurisdiction," which approach the U.S. Supreme Court seemingly abandoned in *International Shoe*. *See Mallory v. Norfolk S. Ry. Co.*, 266 A.3d 542, 567 (Pa. 2021), *reversed* 600 U.S. ___, 2023 U.S. LEXIS 2786. The state court concluded that subsequent U.S. Supreme Court cases "implicitly overruled" the century-old precedent. *Id.* at 559, 567. The U.S. Supreme Court reversed, observing that the state court "clearly erred" in concluding that it could refuse to follow Supreme Court precedent:

---

[7] The majority concedes that the Supreme Court has never overruled or questioned *Borak*'s holding. Ex. A at 29, 34; *see also Va. Bankshares v. Sandberg*, 501 U.S. 1083, 1086–87, 1104 n.11 (1991); *Mills*, 396 U.S. at 381–83.

As this Court has explained: "If a precedent of this Court has direct application in a case," as *Pennsylvania Fire* does here, a lower court "should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." This is true even if the lower court thinks the precedent is in tension with "some other line of decisions."

*Mallory*, 2023 U.S. LEXIS 2786, at **18–19.

The same is true here, and the majority "clearly erred" in concluding—based on its reading of tea leaves—that *Borak* is no longer good law. As Judge Thomas observed:

Criticisms of a Supreme Court decision do not mean that the decision is not binding on us. Such an assertion would fly in the face of the rule of law and upend the supremacy of Supreme Court decisions. We are not free to overrule Supreme Court precedent. *Borak* has not been overruled by the Supreme Court. It remains good law and is binding on us.

Ex. A at 70. Full Court review is necessary to correct the majority's abandonment of *stare decisis*. *See* Fed. R. App. P. 35(b)(1)(A).

### III. Full Court Review Is Necessary Because the Opinion Clashes with the Seventh Circuit's *Seafarers* Decision and Allows Companies to Immunize Themselves from Exclusively-Federal Statutory Claims

In *Seafarers*, the Seventh Circuit held that enforcing a similar bylaw to foreclose shareholders from bringing a derivative § 14(a) claim in any forum

would be "contrary to Delaware corporation law and federal securities law." 23 F.4th at 718; *id.* at 717, 720.  Relying on its abrogation of the Exchange Act's anti-waiver provision and its abandonment of *Borak*, the majority parts ways and creates a direct conflict with *Seafarers*.  Ex. A at 49–55.

Full Court review is necessary to reconcile this conflict, particularly because it "substantially affects a rule of national application in which there is an overriding need for national uniformity."  9TH CIR. R. 35-1.  As both the Seventh Circuit and Judge Thomas observed, enforcement of such bylaws effectively permits companies to "opt out" of the Exchange Act's substantive obligations.  *See Seafarers*, 23 F.4th at 718 (Delaware law "respects federal securities law and does not empower corporations to use such techniques to opt out of the Exchange Act"); Ex. A at 66 (Thomas, J., dissenting) (Gap's bylaw "presents the concern that such bylaws enable a corporation to opt out of substantive federal claims by selecting a forum in which such claims cannot be brought").  Full Court review is thus necessary to ensure that the Ninth Circuit does not become the only Circuit in the nation where companies can circumvent federal courts' jurisdiction and immunize

themselves from exclusively-federal statutory claims simply by adopting a forum clause requiring such claims to be brought in a forum that has no authority to hear them. *See* Ex. A at 70–71 (Thomas, J., dissenting).

## CONCLUSION

Among the ultimate goals of the *en banc* process are ensuring the coherence of the Court's case law, its consistency with Supreme Court law, and, when possible, its agreement with that of the other Circuits. With its disregard of Supreme Court precedent and contravention of clear statutory prohibition against waiver, the six-judge majority opinion has advanced none of these goals. Instead, it has created a direct conflict with the only other Circuit court to have considered the question directly, *see Seafarers*, 23 F.4th 714, and has thrown the viability of ***all*** future derivative Exchange Act claims (at least in the Ninth Circuit) into uncertainty. More broadly, the majority's distorted analysis of shareholders' ability to bring a derivative action for proxy law violations and to protect companies from the misfeasance and malfeasance of wayward directors, *see Kamen*, 500 U.S. at 95, threatens the most basic understanding of shareholder derivative actions,

with grave ramifications for cases beyond this one.  For all these reasons, the

Court should grant rehearing by the full Court.

Dated:  June 29, 2023                    Respectfully submitted,

                                         BOTTINI & BOTTINI, INC.
                                         Francis A. Bottini, Jr.
                                         Yury A. Kolesnikov


                                         _____ s/ Yury A. Kolesnikov _____
                                         Yury A. Kolesnikov

                                         7817 Ivanhoe Avenue, Suite 102
                                         La Jolla, California  92037
                                         Telephone:   (858) 914-2001
                                         Facsimile:   (858) 914-2002

                                         *Attorneys for Plaintiff-Appellant*

# CERTIFICATE OF COMPLIANCE

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** _____ Case No. 21-15923 _____

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition

for panel rehearing/petition for rehearing en banc/response to petition is

*(select one)*:

[ x ]   Prepared in a format, typeface, and type style that complies with Fed.

R. App. P. 32(a)(4)-(6) and **contains the following number of words:**

_____ 4,188 _____**.**

*(Petitions and responses must not exceed 4,200 words)*

**OR**

[  ]  In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15
pages.

**Signature** _____ *s/ Yury A. Kolesnikov* _____ **Date** ___ June 29, 2023 _____
*(use "s/[typed name]" to sign electronically-filed documents)*

22

**CERTIFICATE OF SERVICE**

I certify that, on June 29, 2023, I caused the foregoing Petition for Rehearing *En Banc* by the Full Court to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 29th day of June 2023, at La Jolla, California.

_____*s/ Yury A. Kolesnikov*_____
Yury A. Kolesnikov

# EXHIBIT A

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| NOELLE LEE, derivatively on behalf of The Gap, Inc, <br> *Plaintiff-Appellant,* <br><br> v. <br><br> ROBERT J. FISHER; SONIA SYNGAL; ARTHUR PECK; AMY BOHUTINSKY; AMY MILES; ISABELLA D. GOREN; BOB L. MARTIN; CHRIS O'NEILL; ELIZABETH A. SMITH; JOHN J. FISHER; JORGE P. MONTOYA; MAYO A. SHATTUCK III; TRACY GARDNER; WILLIAM S. FISHER; DORIS F. FISHER; THE GAP, INC., Nominal Defendant, <br> *Defendants-Appellees.* | No. 21-15923 <br><br> D.C. No. 3:20-cv-06163-SK <br><br> OPINION |

Appeal from the United States District Court
for the Northern District of California
Sallie Kim, Magistrate Judge, Presiding

Argued and Submitted En Banc December 12, 2022
Pasadena, California

Filed June 1, 2023

2                           LEE V. FISHER

Before:  Mary H. Murguia, Chief Judge, and Sidney R. Thomas, Sandra S. Ikuta, Jacqueline H. Nguyen, Michelle T. Friedland, Ryan D. Nelson, Bridget S. Bade, Daniel A. Bress, Danielle J. Forrest, Patrick J. Bumatay and Salvador Mendoza, Jr., Circuit Judges.

Opinion by Judge Ikuta;
Dissent by Judge S.R. Thomas

---

## SUMMARY[*]

---

### Securities Exchange Act of 1934

The en banc court affirmed the district court's judgment dismissing, on forum non conveniens grounds, Noelle Lee's putative derivative action alleging that The Gap, Inc. and Gap's directors (collectively "Gap") violated § 14(a) of the Securities Exchange Act of 1934 (the Exchange Act) and Securities and Exchange Commission (SEC) Rule 14a-9 by making false or misleading statements to shareholders about its commitment to diversity.

Gap's bylaws contain a forum-selection clause stating that the Delaware Court of Chancery "shall be the sole and exclusive forum for . . . any derivative action or proceeding brought on behalf of the Corporation."  Lee, a Gap shareholder, brought the putative derivative action in a California district court.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Lee first argued that the forum-selection clause in Gap's bylaws is void because it violates the Exchange Act's antiwaiver provision, § 29(a), 15 U.S.C. § 78cc(a), which provides that "[a]ny condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, . . . shall be void." The en banc court disagreed, because Lee can enforce Gap's compliance with the substantive obligations of § 14(a) by bringing a direct action in federal court. The en banc court rejected Lee's argument that her right to bring a derivative § 14(a) action is stymied by Gap's forum-selection clause, which alone amounts to Gap "waiv[ing] compliance with [a] provision of [the Exchange Act] or of any rule or regulation thereunder." The en banc court explained that the Supreme Court made clear in *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220 (1987), that §29(a) forbids only the waiver of substantive obligations imposed by the Exchange Act, not the waiver of a particular procedure for enforcing such duties. *McMahon* also disposes of Lee's argument that Gap's forum-selection clause is void under § 29(a) because it waives compliance with § 27(a) of the Exchange Act, which gives federal courts exclusive jurisdiction over § 14(a) claims.

Lee next argued that Gap's forum-selection clause is unenforceable under *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), because enforcement would violate the federal forum's strong public policy of allowing a shareholder to bring a § 14(a) derivative action. The linchpin of Lee's argument was the Supreme Court's decision in *J.I. Case Co. v. Borak*, 377 U.S. 426 (1964), which first implied a private right of action allowing a shareholder to bring a "federal cause of action" to redress the injury caused by a proxy statement alleged to contain false

and misleading statements violative of § 14(a) of the Exchange Act.  A close look at *Borak* in its historical context and in light of subsequent Supreme Court developments, however, compels the conclusion that *Borak* does not establish a strong public policy to allow shareholders to bring § 14(a) claims as derivative actions.  The en banc court also rejected Lee's argument that the forum-selection clause conflicts with the federal forum's strong public policy of giving federal courts exclusive jurisdiction over Exchange Act claims under § 27(a).  The en banc court concluded that Lee did not carry her heavy burden of showing the sort of exceptional circumstances that would justify disregarding a forum-selection clause.

Lee next argued that Gap's forum-selection clause is invalid as a matter of Delaware law under Section 115 of the Delaware General Corporation Law (DGCL).  Because the effect of Section 115 is important to the en banc court's decision here, it elected to exercise its discretion to decide the issue, notwithstanding that the three-judge panel deemed the Section 115 issue waived.  Because the Delaware Supreme Court has indicated that federal claims like Lee's derivative § 14(a) action are not "internal corporate claims" as defined in Section 115, and because no language in *Boilermakers Local 154 Retirement Fund v. Chevron Corp.*, 73 A.3d 934 (Del. Ch. 2013), Section 115, or the official synopsis that accompanies Section 115, operates to limit the scope of what constitutes a permissible forum-selection bylaw under Section 109(b) of the DGCL, the en banc court concluded that Gap's forum-selection clause is valid under Delaware law.

The en banc court acknowledged that its decision creates a circuit split with the Seventh Circuit, *see Seafarers Pension*

LEE V. FISHER 5

*Plan ex rel. Boeing Co. v. Bradway*, 23 F.4th 714 (7th Cir. 2022), and did not do so lightly.

Judge S.R. Thomas, joined by Chief Judge Murguia, Nguyen, Friedland, and Mendoza, dissented. Judge Thomas wrote that Gap's forum-selection bylaw requires that any derivative actions brought pursuant to the Exchange Act be adjudicated in the Delaware Court of Chancery. But state courts lack jurisdiction to hear Exchange Act claims, so the bylaw provision is a litigation bridge to nowhere, depriving shareholders of any forum in which to pursue derivative claims. Judge Thomas wrote that a judge-made federal policy in favor of enforcing forum-selection clauses cannot supersede the clear antiwaiver provision enacted by Congress in the Exchange Act, which voids such a provision. He wrote that the majority's conclusion that Gap's bylaw is both valid and enforceable conflicts with the plain language of the Exchange Act.

## COUNSEL

Yury A. Kolesnikov (argued), Francis A. Bottini Jr., and Albert Y. Chang, Bottini & Bottini Inc., La Jolla, California, for Plaintiff-Appellant.

Roman Martinez (argued), Susan E. Engel, Michael Clemente, and Jordan R. Goldberg, Latham & Watkins LLP, Washington, D.C.; Elizabeth L. Deeley and Morgan E. Whitworth, Latham & Watkins, San Francisco, California; William J. Trach, Latham & Watkins LLP, Boston, Massachusetts; for Defendants-Appellees.

Allison M. Zieve and Scott L. Nelson, Public Citizen Litigation Group, Washington, D.C., for Amici Curiae

Public Citizen, Consumer Federation of America, and Better Markets.

Jeremy A. Lieberman and Emma Gilmore, Pomerantz LLP, New York, New York; Jennifer Pafiti, Pomerantz LLP, Los Angeles, California; Ernest A. Young, Apex, North Carolina; for Amici Curiae Law Professors.

Jeffrey R. White, American Association for Justice, Washington, D.C., for Amicus Curiae American Association for Justice.

Boris Feldman, Doru Gavril, Elise Lopez, and Sigourney Jellins, Freshfields Bruckhaus Deringer US LLP, Redwood City, California, for Amici Curiae Professors Joseph A. Grundfest and Mohsen Manesh.

Anitha Reddy, Wachtell Lipton Rosen & Katz, New York, New York; Tyler S. Badgley and Janet Galeria, United States Chamber Litigation Center, Washington, D.C.; Stephanie Martz, National Retail Federation, Washington, D.C.; for Amici Curiae The Chamber of Commerce of the United States of America and the National Retail Federation.

LEE V. FISHER                                    7

# OPINION

IKUTA, Circuit Judge:

Noelle Lee brought an action against The Gap, Inc. and its directors, "derivatively on behalf of Gap."[1]  Lee's action alleged that Gap violated § 14(a) of the Securities Exchange Act of 1934 (the Exchange Act) and Securities and Exchange Commission (SEC) Rule 14a-9 by making false or misleading statements to shareholders about its commitment to diversity.  Gap's bylaws contain a forum-selection clause stating that the Delaware Court of Chancery "shall be the sole and exclusive forum for . . . any derivative action or proceeding brought on behalf of the Corporation."  Lee nevertheless brought her putative derivative action in a California district court.  The district court granted Gap's motion to dismiss Lee's complaint on forum non conveniens grounds.  Lee's appeal raises three questions:  (1) whether Gap's forum-selection clause is void because it violates the Exchange Act's antiwaiver provision, § 29(a), 15 U.S.C. § 78cc(a); (2) whether the forum-selection clause is unenforceable under *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), because enforcement would violate a strong public policy of the federal forum; and (3) whether Gap's bylaw is invalid because it is contrary to Delaware law.  We answer "no" to each question and affirm the district court.

---

[1] We refer to the defendants collectively as Gap, but sometimes also refer to the corporation individually as Gap, where appropriate in context.

I

The Exchange Act, 15 U.S.C. §§ 78a–78qq, regulates the trading of securities on national stock exchanges, and includes a range of prohibitions aimed at "promot[ing] honest practices in the securities markets." *Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 138 S. Ct. 1061, 1066 (2018). The Exchange Act "and its companion legislative enactments embrace a 'fundamental purpose . . . to substitute a philosophy of full disclosure for the philosophy of caveat emptor and thus to achieve a high standard of business ethics in the securities industry.'" *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 151 (1972) (citing *SEC v. Cap. Gains Rsch. Bureau*, 375 U.S. 180, 186 (1963) (footnote omitted).

The Exchange Act provision that forms the basis for Lee's federal claim is § 14(a), which states: "It shall be unlawful for any person, . . . in contravention of such rules and regulations as the [SEC] may prescribe[,] . . . to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security." 15 U.S.C. § 78n(a)(1). Rule 14a-9, one of the regulations promulgated by the SEC to implement § 14(a), provides that "[n]o solicitation subject to this regulation shall be made by means of any proxy statement, . . . containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact." 17 C.F.R. § 240.14a-9(a).

The Exchange Act prohibits a range of other deceptive actions, including price manipulation, §§ 9, 15 U.S.C. §§ 78i, "short-swing trading" by corporate insiders, 16, 78p, and making false or misleading statements in reports or documents filed with the SEC, 18, 78r. Each of these

provisions includes an express private right of action allowing a shareholder to bring an action against a person who violates these prohibitions. *See* §§ 9(c), 15 U.S.C. §§ 78i(f), 16(b), 78p(b), and 18(a), 78r(a). Unlike these prohibitions, the Exchange Act "makes no provision for private recovery for a violation of § 14(a)," *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391 (1970), although the Supreme Court has permitted shareholders to bring such actions, *see J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964).

The Exchange Act also includes various provisions that govern its implementation, including antiwaiver and jurisdictional provisions. Section 29(a) of the Exchange Act provides that "[a]ny condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of a self-regulatory organization, shall be void." 15 U.S.C. § 78cc(a). In addition, § 27(a) of the Exchange Act gives federal courts "exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by" the Act. *Id.* § 78aa(a).

## II

We now turn to the facts of this case. Gap, a clothing retailer headquartered in San Francisco, is incorporated in Delaware, and therefore governed by Delaware law. *See CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 89–90 (1987). Pursuant to Section 109(b) of the Delaware General Corporation Law (DGCL),[2] Gap adopted bylaws setting

---

[2] Section 109(b) of the DGCL broadly authorizes corporations to adopt bylaws that "contain any provision, not inconsistent with law or with the certificate of incorporation, relating to the business of the corporation,

forth the rules by which it conducts its corporate business. Gap's bylaws include a forum-selection clause, which states in part: "Unless the Corporation consents in writing to the selection of an alternative forum, the Court of Chancery of the State of Delaware shall be the sole and exclusive forum for . . . any derivative action or proceeding brought on behalf of the Corporation . . . ."

Gap's inclusion of a forum-selection clause in its bylaws is consistent with a modern corporate trend. *See* Verity Winship, *Shareholder Litigation by Contract*, 96 B.U. L. Rev. 485, 500–04 (2016). In the first decade of the 2000s, there was an increase in litigation, *id.*, "brought by dispersed stockholders in different forums, directly or derivatively, to challenge a single corporate action," *Boilermakers Loc. 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 944 (Del. Ch. 2013). Because multiforum litigation could impose high costs and hurt investors, *id.*, many corporations adopted forum-selection clauses in response, *see KT4 Partners LLC v. Palantir Techs. Inc.*, 203 A.3d 738, 759 (Del. 2019); *see also* Mohsen Manesh & Joseph A. Grundfest, *Abandoned and Split But Never Reversed: Borak and Federal Derivative Litigation* (forthcoming 2023) (manuscript, at 11–12), online at https://ssrn.com/abstract=4274616.

Notwithstanding Gap's forum-selection clause, Lee, a Gap shareholder, filed a complaint in a California district court asserting claims "derivatively on behalf of Gap" against 15 current and former Gap directors. The complaint alleged a violation of § 14(a) of the Exchange Act and SEC Rule 14a-9, as well as state-law claims for breach of

---

the conduct of its affairs, and its rights or powers or the rights or powers of its stockholders, directors, officers or employees." 8 Del. C. § 109(b).

fiduciary duty, aiding and abetting a breach of fiduciary duty, abuse of control, and unjust enrichment. The gravamen of Lee's complaint is that Gap filed proxy statements with the SEC in 2019 and 2020 that contained misstatements about Gap's corporate governance, including its failure to consider diversity in nominating directors and hiring executives. According to the complaint, "[d]espite [Gap's] supposed 'imperative' to be inclusive, Gap has failed to create any meaningful diversity at the very top of the Company," and has in fact "deceived stockholders . . . by repeatedly making false assertions about [its] commitment to diversity." The complaint alleged that Gap's false statements denied Gap's shareholders the right to a fully informed vote. According to the complaint, had Gap's proxy statements been truthful about its discriminatory hiring and compensation practices and its lack of high-level diversity, then "shareholders would not have voted to reelect Board members, approve executive compensation packages, and reject an independent Board chairman." As a remedy for this alleged "interfere[nce] with [her] voting rights and choices at the 2019 and 2020 annual meetings," Lee sought injunctive and equitable relief "on behalf of" Gap. Lee did "not seek any monetary damages for the proxy law violations."

Lee's complaint is consistent with another modern trend, in which plaintiffs frame corporate mismanagement claims that normally arise under state law (including challenges to corporate policies relating to "ESG [environmental, social, and governance] issues . . . such as environmentalism, racial and gender equity, and economic inequality") as proxy nondisclosure claims under § 14(a), in order to invoke exclusive federal jurisdiction and avoid any forum-selection

12                          LEE V. FISHER

clause pointing to a state forum.  Robert L. Haig, 8 Bus. &
Com. Litig. Fed. Cts. § 97:14 (5th ed. 2022).

Gap moved to dismiss Lee's complaint, and the district
court granted Gap's motion on grounds of forum non
conveniens, based on Lee's decision to file her derivative
suit in a California federal court rather than the Delaware
Court of Chancery, as mandated by Gap's forum-selection
clause.[3]  After Lee appealed, a three-judge panel affirmed
the district court.  *Lee v. Fisher*, 34 F.4th 777 (9th Cir.),
*reh'g en banc granted, opinion vacated sub nom. Lee ex rel.
The Gap, Inc. v. Fisher*, 54 F.4th 608 (9th Cir. 2022).  We
decided to rehear this case en banc to consider whether a
forum-selection clause in a corporate bylaw can require that
all derivative actions be brought in a state court in the state
of incorporation, effectively prohibiting a § 14(a) derivative
action from being brought in any forum.

We have jurisdiction under 28 U.S.C. § 1291.  We
review a district court's dismissal of a complaint for failure
to comply with a forum-selection clause for abuse of
discretion, *see Yei A. Sun v. Advanced China Healthcare,
Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018), and we review
questions of law de novo, including whether the antiwaiver
provisions of federal securities laws void a forum-selection
clause, *see Richards v. Lloyd's of London*, 135 F.3d 1289,
1292 (9th Cir. 1998) (en banc).

                              III

On appeal, Lee argues that the forum-selection clause in
Gap's bylaws is void because it violates § 29(a), the

_____

[3] In granting Gap's motion, the district court dismissed Lee's claims
without prejudice to refiling.

LEE V. FISHER                                           13

antiwaiver provision of the Exchange Act. She also argues that the district court erred in dismissing her complaint on forum non conveniens grounds, because enforcing the forum-selection clause would violate a strong public policy of the federal forum. Finally, she argues that Gap's forum-selection clause is invalid as a matter of Delaware law under Section 115 of the DGCL. 8 Del. C. § 115. We address these arguments in turn.

## A

We begin with Lee's argument that Gap's forum-selection clause is void under the Exchange Act's antiwaiver provision, § 29(a), which provides that "[a]ny condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, . . . shall be void." 15 U.S.C. § 78cc(a). The Supreme Court has interpreted § 29(a) as prohibiting "only . . . waiver of the substantive obligations imposed by the Exchange Act." *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 228 (1987). We have held that § 29(a) "applies only to express waivers of non-compliance" with the provisions of the Exchange Act. *Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034, 1041 (9th Cir. 2011) (cleaned up).

Applying these interpretations, we must determine whether the requirement in Gap's bylaws that "the Court of Chancery of the State of Delaware shall be the sole and exclusive forum for . . . any derivative action or proceeding brought on behalf of the Corporation" authorizes Gap to waive compliance with the substantive obligation imposed by § 14(a) and Rule 14a-9, which is the obligation not to make a false or misleading statement in a proxy statement. *See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 444

14                    LEE v. FISHER

(1976); *see also Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000).  In interpreting Gap's forum-selection clause, we apply Delaware's rules of contract interpretation, because "[c]orporate charters and bylaws are contracts among a corporation's shareholders." *Airgas, Inc. v. Air Prods. & Chems., Inc.*, 8 A.3d 1182, 1188 (Del. 2010); *see also Hill Int'l, Inc. v. Opportunity Partners L.P.*, 119 A.3d 30, 38 (Del. 2015).[4]  Under these rules of interpretation, the "[w]ords and phrases used in a bylaw are to be given their commonly accepted meaning unless the context clearly requires a different one or unless legal phrases having a special meaning are used." *Airgas*, 8 A.3d at 1188 (citation and internal quotation marks omitted).

On its face, Gap's forum-selection clause does not constitute an "express waiver[] of non-compliance," because the clause does not expressly state that Gap need not comply with § 14(a) or Rule 14a-9 or the substantive obligations they impose.  *Facebook*, 640 F.3d at 1041.  Nevertheless, Lee argues that Gap's forum-selection clause functionally waives compliance with § 14(a) and Rule 14a-9, even if it does not do so expressly.  She reasons that Gap's forum-selection clause requires her to bring a derivative § 14(a) action in the Court of Chancery.  Because § 27(a) of the Exchange Act provides that federal courts have "exclusive jurisdiction of violations" of the Exchange Act, 15 U.S.C.

---

[4] The bylaws are not only a contract among stockholders, but are also considered "part of a binding broader contract among the directors, officers and stockholders formed within the statutory framework of the Delaware General Corporation Law," *Hill Int'l*, 119 A.3d at 38, because "the certificate of incorporation may authorize the board to amend the bylaws' terms and that stockholders who invest in such corporations assent to be bound by board-adopted bylaws when they buy stock in those corporations," *Boilermakers*, 73 A.3d at 940.

§ 78aa(a), enforcing the clause would mandate that the Court of Chancery dismiss her derivative § 14(a) action.  Thus, if Gap's forum-selection clause is enforceable, Lee would be precluded from bringing a derivative § 14(a) action in any forum.   According to Lee, this means that Gap, its shareholders, directors, and officers have agreed to waive compliance with the substantive obligations imposed by § 14(a) and Rule 14a-9.

We disagree, because Lee can enforce Gap's compliance with the substantive obligations of § 14(a) by bringing a direct action in federal court.[5]  The forum-selection clause makes the Court of Chancery the exclusive forum only as to a "derivative action or proceeding."  But it does not impose any limitation on direct actions, and Lee can still bring her action against Gap under § 14(a) and Rule 14a-9 as a direct action.

We reach the conclusion that Lee can bring her action as a direct action in federal court for the following reasons.  The terms "derivative action" and "direct action" in the forum-selection clause must be defined according to Delaware

---

[5] Lee can also enforce the substantive obligation to refrain from making false or misleading statements in a proxy statement under Delaware law. It is a "well-recognized proposition that directors of Delaware corporations are under a fiduciary duty to disclose fully and fairly all material information within the board's control when it seeks shareholder action," *Stroud v. Grace*, 606 A.2d 75, 84 (Del. 1992), and this "duty of full disclosure [applies] in assessing the adequacy of proxy materials," *id.* at 86; *see also Appel v. Berkman*, 180 A.3d 1055, 1057 (Del. 2018).  This Delaware nondisclosure claim aligns with the "broad remedial purpose" of Rule 14a-9, which is "to ensure disclosures by corporate management in order to enable the shareholders to make an informed choice."  *TSC Indus.*, 426 U.S. at 448.

16                     LEE V. FISHER

law.[6]  *See Airgas*, 8 A.3d at 1188.  Under Delaware law, the classification of an action as direct or derivative is "based solely on the following questions:  Who suffered the alleged harm—the corporation or the suing stockholder individually—and who would receive the benefit of the recovery or other remedy?"  *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1035 (Del. 2004).  Under this test, a "derivative action" is one brought "on behalf of the corporation for harm done to the corporation," while a "direct action" is one where "the stockholder has demonstrated that . . . she has suffered an injury that is not dependent on an injury to the corporation."  *Id.* at 1036.  The "[p]laintiffs' classification of the suit is not binding," *id.* at 1035 (citation omitted), but rather a court must "independently examine the nature of the wrong alleged and any potential relief to make its own determination of the suit's classification," *id.*  Lee can bring her action against Gap under § 14(a) and Rule 14a-9 as a direct action under the *Tooley* test, because her complaint is based on the theory that Gap's shareholders were denied the right to a fully informed vote at the 2019 and 2020 annual meetings.  Lee and other shareholders suffered the alleged harm—a proxy nondisclosure injury in violation of § 14(a) that interfered with their voting rights and choices—and would receive the benefit of the remedy—the equitable or injunctive relief sought in the complaint.  This conclusion is confirmed by the

---

[6] We apply Delaware law not only because we review the forum-selection clause according to Delaware's rules of contract interpretation, but also because we have held that "[t]he characterization of a claim as direct or derivative is governed by the law of the state of incorporation." *N.Y.C. Emps. Ret. Sys. v. Jobs*, 593 F.3d 1018, 1022 (9th Cir. 2010), *overruled on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012) (en banc).

Delaware Supreme Court's statement "that where it is claimed that a duty of disclosure violation impaired the stockholders' right to cast an informed vote, that claim is direct." *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 766, 772 (Del. 2006); *see also Brookfield Asset Mgmt., Inc. v. Rosson*, 261 A.3d 1251, 1263 n.39 (Del. 2021) ("An example of harm unique to the stockholders would be a board failing to disclose all material information when seeking stockholder action.").[7]  We have also recognized that a claim that "shareholders were deprived of the right to a fully informed vote . . . is a direct claim" under Delaware law.  *Jobs*, 593 F.3d at 1022–23.

Lee does not cite any federal rule or case that would prevent her from suing Gap directly, rather than derivatively, under § 14(a) in federal court.  To the contrary, under our caselaw, Lee can sue Gap directly under § 14(a) in two different ways, "either individually or as [a] representative of [a] class," *Yamamoto v. Omiya*, 564 F.2d 1319, 1323 (9th Cir. 1977), which is consistent with Delaware Supreme Court precedent, *see Kramer v. W. Pac. Indus., Inc.*, 546

---

[7] Lee asserts that she must bring her § 14(a) action as a derivative, rather than a direct, action in part because it "does not allege that [Gap's] conduct harmed shareholders by impacting the stock price."  But under the *Tooley* test, such an allegation is neither necessary nor sufficient to qualify an action as direct.  845 A.2d at 1035.  To the contrary, "[w]ithholding information from shareholders violates their rights even if" doing so obtains a "highly profitable[] result," because "[t]o hold otherwise would be to state that a corporation may request consent from its shareholders, withhold relevant information, and only be liable for damages in those situations in which it appears *ex post* that the company has suffered financial damages."  *In re Tyson Foods, Inc.*, 919 A.2d 563, 602 (Del. Ch. 2007).  "This cannot be, and is not, the law of Delaware." *Id.*; *see also In re INFOUSA, Inc. S'holders Litig.*, 953 A.2d 963, 1001 n.82 (Del. Ch. 2007).

A.2d 348, 351 (Del. 1998) (holding that a shareholder may bring a direct action as an individual or as part of "a class [of shareholders], for injuries done to them in their individual capacities by corporate fiduciaries" (citation and emphasis omitted)).

Therefore, because Lee's action to enforce the substantive obligations imposed by § 14(a) and Rule 14a-9 can be brought as a direct action, there is no basis for her argument that Gap's forum-selection clause (which, by its terms, has no impact on direct actions) effects a functional waiver of compliance with the substantive obligations imposed by § 14(a) and Rule 14a-9.[8]

Lee raises a second argument as to why the forum-selection clause conflicts with § 29(a)'s antiwaiver provision:  that regardless whether she can bring a *direct* § 14(a) action against Gap, her right to bring a *derivative* § 14(a) action is stymied by Gap's forum-selection clause,

---

[8] The dissent argues that because we conclude that Lee can bring her § 14(a) action as a direct action, Gap's forum-selection clause has no effect (because it applies only to derivative actions), and thus her action "must remain in federal court."  Dissent 62 n.2.  This argument is meritless.  Although Lee could have brought her § 14(a) action as a direct action, she has not done so, nor has she asked us to recharacterize her current complaint as raising a direct action.  Indeed, Lee has steadfastly asserted in her briefs and at oral argument that her complaint brings only a derivative § 14(a) action.  Lee "is the master of h[er] complaint, and [s]he owns the allegations that have landed" her within the scope of Gap's forum-selection clause.  *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 (9th Cir. 2020).  Therefore, our statement that Lee's § 14(a) action would be categorized as direct under Delaware law merely points out that Lee could enforce Gap's compliance with § 14(a) in a direct action in federal court, and cannot show that the forum-selection clause effects an express or implied waiver of the substantive obligations imposed by § 14(a), such as would violate § 29(a)'s antiwaiver provision.

LEE V. FISHER                                    19

which alone amounts to Gap "waiv[ing] compliance with [a] provision of [the Exchange Act] or of any rule or regulation thereunder." 15 U.S.C. § 78cc(a).

This argument fails because, as the Supreme Court made clear in *McMahon*, § 29(a) forbids only the "waiver of the substantive obligations imposed by the Exchange Act," not the waiver of a particular procedure for enforcing such duties. 482 U.S. at 228. In *McMahon*, investors argued that an arbitration agreement in a brokerage contract was unenforceable under § 29(a), on the ground that the "arbitration agreement effect[ed] an impermissible waiver of the substantive protections of the Exchange Act." *Id.* at 229. The Court rejected this argument, because the investors could still raise their substantive Exchange Act claims in the arbitral forum, which "provide[d] an adequate means of enforcing" them. *Id.* Therefore, the Court concluded that the arbitration agreement would not "weaken[] [the investors'] ability to recover under the [Exchange] Act." *Id.* at 229–30 (citation omitted).

The same reasoning is applicable here. Like the arbitration clause in *McMahon*, Gap's forum-selection clause does not waive Gap's compliance with any substantive obligation (meaning any "statutory duty," *id.* at 230) imposed by the Exchange Act. A shareholder can enforce Gap's statutory duty to comply with § 14(a) by means of a direct action in federal court, just as the investors in *McMahon* could enforce compliance with Exchange Act duties in an arbitral forum. An agreement to use a particular procedure for bringing a claim—arbitration instead of litigation, or a direct action instead of a derivative action—does not constitute a waiver of a substantive obligation for purposes of § 29(a). *See id.* at 232 (stating that arbitration's "streamlined procedures . . . do not entail any consequential

restriction on substantive rights"). Nor does a provision that functionally requires the use of a direct action to enforce Gap's disclosure obligations "weaken[] [Lee's] ability to recover under the [Exchange] Act." *Id.* at 230. Lee does not explain how a direct action would be harder to prosecute than a derivative § 14(a) action in this context. To the contrary, "[t]he exacting procedural prerequisites to the prosecution of a derivative action create incentives for plaintiffs to characterize their claims as 'direct' or 'individual.'"[9] *Agostino v. Hicks*, 845 A.2d 1110, 1117 (Del. Ch. 2004). The dissent likewise fails to explain how the forum-selection clause would foreclose or otherwise impair Lee's ability to bring her § 14(a) action.

*McMahon* also disposes of Lee's argument that Gap's forum-selection clause is void under § 29(a) because it waives compliance with § 27(a), which gives federal courts exclusive jurisdiction over § 14(a) claims. This same argument was raised in *McMahon*, in which the investors claimed that the requirement that claims be heard in an arbitral forum constituted a waiver of § 27(a)'s grant of exclusive jurisdiction to federal courts. 482 U.S. at 227–28. The Supreme Court rejected this argument, holding that, "[b]y its terms, § 29(a) only prohibits waiver of the substantive obligations imposed by the Exchange Act," and "[b]ecause § 27 does not impose any statutory duties, its

---

[9] A plaintiff asserting a derivative action in federal court must file a verified complaint alleging that: (1) "the plaintiff was a shareholder . . . at the time of the transaction complained of"; (2) "the action is not a collusive one to confer jurisdiction that the court would otherwise lack"; and (3) "state with particularity (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority . . . ; and (B) the reasons for not obtaining the action or not making the effort." Fed R. Civ. P. 23.1(b).

waiver does not constitute a waiver of 'compliance with any provision' of the Exchange Act under § 29(a)." *Id.* at 228. Under *McMahon*, therefore, § 29(a) does not prohibit waiver of § 27(a). *See Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 482 (1989) (confirming *McMahon*'s holding that § 29(a) does not prohibit waiver of jurisdictional provisions such as § 27(a)). Lee attempts to distinguish *McMahon* on the ground that it "concerned the enforceability of a predispute *arbitration agreement*, not [a] forum-selection clause." This argument is unavailing, because "[a]n agreement to arbitrate . . . is, in effect, a specialized kind of forum-selection clause." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974).

We also reject the dissent's argument that the forum-selection clause is unenforceable because Gap's shareholders —whether they are "sophisticated parties" or not, Dissent 66—did not "consent" to its inclusion in the corporate bylaws, Dissent 65, and had "no opportunity to negotiate the content of the bylaws or alter terms not to their liking." Dissent 66. This argument fails as a matter of both federal and Delaware law. The Supreme Court has expressly rejected the "determination that a nonnegotiated forum-selection clause in a . . . contract is never enforceable simply because it is not the subject of bargaining." *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991). We have likewise held that "a differential in power or education on a non-negotiated contract will not vitiate a forum selection clause." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1141 (9th Cir. 2004). And because "state law governs the validity of a forum-selection clause just like any other contract clause," *DePuy Synthes Sales, Inc. v. Howmedica Osteonics Corp.*, 28 F.4th 956, 963–64 (9th Cir.), *cert. denied*, 143 S. Ct. 536 (2022), it is even more significant that

22                              LEE V. FISHER

Delaware courts have not agreed with the dissent's reasoning. In *Boilermakers*, the court rejected the plaintiff's claim that "forum selection bylaws by their nature are different and cannot be adopted by the board unilaterally," 73 A.3d at 954, and stated that, "[u]nlike cruise ship passengers, who have no mechanism by which to change their tickets' terms and conditions, stockholders retain the right to modify the corporation's bylaws," *id*. at 957–58 (discussing *Carnival Cruise Lines*, 499 U.S. at 594–95). As a result, *Boilermakers* held that, "[l]ike any other bylaw, which may be unilaterally adopted by the board and subsequently modified by stockholders, [forum-selection] bylaws are enforced according to their terms." *Id.* at 958. Thus, contrary to the dissent, the fact that Gap's forum-selection clause is located in Gap's bylaws does not render it "nonconsensual" and therefore void. Dissent 67.

Because Gap's forum-selection clause does not waive Gap's compliance with the substantive obligations imposed by § 14(a) and Rule 14a-9, we conclude that the clause is not void under § 29(a).[10]

---

[10] The dissent has failed to identify any § 14(a) claim that cannot be brought as a direct action, and therefore has failed to show that the unavailability of a derivative § 14(a) action precludes enforcement of any substantive obligation arising under § 14(a). Accordingly, the dissent's observation that "[d]irect and derivative suits are not interchangeable," Dissent 60, is irrelevant here. Because § 29(a)'s antiwaiver provision is concerned only with waiver of the substantive obligations imposed by the Exchange Act, the availability of any particular method of enforcing those obligations is not material. *See McMahon*, 482 U.S. at 228.

B

We now turn to Lee's argument that Gap's forum-selection clause cannot be enforced under the doctrine of forum non conveniens because doing so would violate the federal forum's strong public policy of allowing a shareholder to bring a § 14(a) derivative action.

"[T]he enforceability of a forum-selection clause in a federal court is a well-established matter of federal law . . . ." *DePuy Synthes Sales*, 28 F.4th at 962 (emphasis omitted). Because § 29(a) does not void Gap's forum-selection clause, it is enforceable "through the doctrine of forum non conveniens" unless an exception applies. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60 (2013). "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Id.* at 62. There is a narrow exception to this general rule if the plaintiff can demonstrate "extraordinary circumstances unrelated to the convenience of the parties [that] clearly disfavor a transfer." *Id*. at 52. One such extraordinary circumstance arises when the plaintiff makes a strong showing that "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *M/S Bremen*, 407 U.S. at 15.[11] The plaintiff bears the burden of showing why the court should

---

[11] The other exceptions to the general rule arise when the plaintiff makes a strong showing that the clause is invalid due to "fraud or overreaching," *M/S Bremen*, 407 U.S. at 15, or that "trial in the contractual forum will be so gravely difficult and inconvenient that [the litigant] will for all practical purposes be deprived of his day in court," *id.* at 18.

not transfer the case to the forum identified in the forum-selection clause. *Atl. Marine*, 571 U.S. at 64.

Lee argues that an extraordinary circumstance is present here. She claims that enforcing Gap's forum-selection clause would violate the federal forum's strong public policy, declared both by the Exchange Act and by judicial decision, "of the shareholders' right . . . to bring a derivative [§ 14(a)] action," which can be brought only in federal court. Her argument proceeds as follows. Lee first asserts that Congress placed high importance on corporate compliance with the Exchange Act, as evidenced by the fact that Congress prohibited the waiver of the Exchange Act's substantive obligations, *see* § 29(a), and conferred exclusive federal jurisdiction over Exchange Act claims, *see* § 27(a). Although the Exchange Act itself does not provide a private right of action to enforce § 14(a), *see Mills*, 396 U.S. at 391, Lee next contends that the Supreme Court's decision in *Borak* was intended to further Congress's policy goals by allowing for "[p]rivate enforcement of the proxy rules" under § 14(a) as "a necessary supplement to [SEC] action," 377 U.S. at 432. She then claims that *Borak* reflects a strong public policy to give shareholders a right to bring both a direct and a derivative action to enforce § 14(a). Lee concludes by asserting that enforcing Gap's forum-selection clause would contravene this policy.

1

The linchpin of Lee's argument is the Supreme Court's decision in *Borak*, which first implied a private right of action allowing a shareholder to bring a "federal cause of action" to redress the injury caused by a "proxy statement alleged to contain false and misleading statements violative of § 14(a) of the [Exchange] Act." 377 U.S. at 428. A close

LEE V. FISHER                    25

look at *Borak* in its historical context and in light of subsequent Supreme Court developments, however, compels the conclusion that *Borak* does not establish a strong public policy to allow shareholders to bring § 14(a) claims as derivative actions.

In *Borak*, a shareholder brought a direct § 14(a) action against the directors of a corporation, alleging that the directors had circulated materially misleading proxy statements in order to secure approval of a merger. 377 U.S. at 427. The shareholder alleged that "the merger would not have been approved but for the false and misleading statements in the proxy solicitation material; and that [the] stockholders were damaged thereby." *Id*. at 430. In considering this claim, *Borak* examined Congress's policy goals in enacting § 14(a), and concluded that Congress intended § 14(a) "to prevent the recurrence of abuses which had frustrated the free exercise of the voting rights of stockholders," because Congress understood that "fair corporate suffrage is an important right that should attach to every equity security bought on a public exchange." *Id*. at 431 (cleaned up). *Borak* therefore ruled that the shareholders could bring their action under § 14(a), because such an implied private right of action was necessary in order to ensure that shareholders do not receive "deceptive or inadequate disclosure[s] in proxy solicitation[s]" so that they can make informed votes on corporate matters requiring their approval. *Id*. Because the SEC did not have the resources to evaluate every proxy statement and enforce the requirements of § 14(a) on its own, "[p]rivate enforcement of the proxy rules [would] provide[] a necessary supplement to [SEC] action." *Id.* at 432.

After holding that a shareholder had the right to bring a direct action under § 14(a), *Borak* appended a less well-

reasoned statement that a shareholder could also bring a derivative § 14(a) action. Even though the shareholder in *Borak* "contend[ed] that his . . . claim [wa]s not a derivative one," the Court stated that it believed "a right of action exists as to both derivative and direct causes." *Id.* at 431. The Court reasoned that "[t]he injury which a stockholder suffers from corporate action pursuant to a deceptive proxy solicitation ordinarily flows from the damage done the corporation, rather than from the damage inflicted directly upon the stockholder," and explained that this was because "[t]he damage suffered results not from the deceit practiced on him alone but rather from the deceit practiced on the stockholders as a group." *Id.* at 432. The Court concluded that "[t]o hold that derivative actions are not within the sweep of the section would therefore be tantamount to a denial of private relief." *Id.*

Even at the time *Borak* was decided, these statements did not square with the Supreme Court's jurisprudence regarding derivative actions. Nor did *Borak* attempt to harmonize its statements on derivative actions with the Court's precedent.

Some background on the history of derivative actions is instructive. A derivative action is a judge-made legal mechanism first developed by the English Court of Chancery to give shareholders the ability to address alleged wrongs committed by those in control of the corporation. *See* Ann M. Scarlett, *Shareholder Derivative Litigation's Historical and Normative Foundations*, 61 Buff. L. Rev. 837, 842, 848 (2013). Judicial understanding of this mechanism evolved over time. Early state-court cases sometimes characterized such suits as representative actions, in which one shareholder was permitted to represent all other shareholders in pursuing a remedy when corporate managers engaged in

LEE V. FISHER                                      27

fraud, self-dealing, or other misconduct.  *See, e.g.*, *Peabody v. Flint*, 88 Mass. 52, 56–57 (1863); *see also Allen v. Curtis*, 26 Conn. 456, 459–62 (1857); *Hersey v. Veazie*, 24 Me. 9, 11–12 (1844).  But long before *Borak* was decided, this type of action was generally characterized in federal court as a suit by a shareholder raising a corporation's legal claims, on the corporation's behalf, when the corporation failed to do so.  *See, e.g.*, *Hawes v. City of Oakland*, 104 U.S. 450, 454 (1881) (recognizing a category of lawsuits that "permits the stockholder in [a] corporation[] to step in between that corporation and the party with whom it has been dealing and institute and control a suit in which the rights involved are those of the corporation").  Subsequent Supreme Court cases confirmed that "the term derivative action . . . appl[ied] only to those actions in which the right claimed by the shareholder is one the corporation could itself have enforced in court." *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 529 (1984); *see also Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 548 (1949).  Soon after *Hawes*, the Supreme Court codified this understanding of derivative actions, first in Equity Rule 94 (1882), next in Equity Rule 27 (1912), and then in Rule 23(b) of the Federal Rules of Civil Procedure (1937).  *See Daily Income Fund*, 464 U.S. at 530 n.5.  By 1966, the procedural rules for a derivative action were adopted in Rule 23.1 of the Federal Rules of Civil Procedure, where they remain in substantially the same form today. Fed. R. Civ. P. 23.1.[12]

---

[12] Rule 23.1"applies when one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce."  Fed. R. Civ. P. 23.1(a).

*Borak*'s statement about the availability of derivative actions is unsupported by reasoning or explanation regarding how a derivative § 14(a) action fit into this established judicial framework.    Most important, although *Borak* recognized that § 14(a) protected a shareholder's right to receive accurate proxy statements, and that such a right was necessary for "the free exercise of the voting rights of stockholders," 377 U.S. at 431, it failed to explain how a corporation would itself have a right to bring a § 14(a) claim that it could enforce in court, which was the basis for a derivative action under the prevailing caselaw.    Instead, *Borak*'s statement that the shareholder's injury flows "from the deceit practiced on the stockholders as a group," *id.* at 432, seems to hark back to the earlier view of a derivative action as a representative action that allowed one shareholder to represent all other shareholders in pursuing a remedy for improper actions by corporate managers.    Nor did *Borak* explain how the lack of a derivative action was "tantamount to a denial of private relief," *id.*, given that a shareholder could bring a direct action under § 14(a), including in a representative action.    Finally, *Borak* failed to explain how the availability of a derivative action would apply to the shareholder in that case, who explicitly brought only a direct action.    *Id.* at 431. Thus, the Court's discussion regarding derivative actions was "unnecessary to the announcement or application of the rule [*Borak*] established," and therefore dicta.    *Murr v. Wisconsin*, 137 S. Ct. 1933, 1946 (2017); *see also Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 738 (2007).

Perhaps because *Borak*'s discussion of a derivative § 14(a) action was not well-explained or well-reasoned, or because *Borak* did not explain how such an action was consistent with then-current Supreme Court rules and

precedent, subsequent Supreme Court cases did not further address or develop the availability of this sort of remedy. No Supreme Court decision since *Borak* has expressly addressed this issue. In *Mills*, the Court observed that the plaintiff "asserted the right to complain of th[e] alleged [§ 14(a)] violation both derivatively on behalf of [the corporation] and as representatives of the class of all its minority shareholders," but did not classify the plaintiff's action as one or the other, nor set forth a legal framework for doing so.[13] 396 U.S. at 378. The two other post-*Borak* Supreme Court cases involving a § 14(a) action did not specify whether the action was direct or derivative. *See TSC Indus.*, 426 U.S. at 440–43; *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1099 (1991) ("[*Borak*] did not itself . . . define the class of plaintiffs eligible to sue under § 14(a). But its general holding [was]. . . that a private cause of action was available to *some shareholder class*[.]" (emphasis added)).

Therefore, *Borak*'s statement that a shareholder could bring a derivative § 14(a) action, which was not necessary to decide that case, and not addressed in subsequent Supreme Court cases, does not establish a strong public policy in favor of such actions.

## 2

Two developments in Supreme Court jurisprudence since *Borak* further undermine that case's reasoning, and

---

[13] *Mills* stated that the plaintiff had a "derivative right to invoke [the corporation's] status as a party to the [challenged merger] agreement" at issue under § 29(b) of the Exchange Act, 15 U.S.C. § 78cc(b), but it did not address whether a derivative action was available under § 14(a). 396 U.S. at 388 (cleaned up).

thus further vitiate Lee's assertion that there is a strong public policy of the federal forum allowing shareholders to bring derivative § 14(a) actions.

First, in stating that there was an implied right to bring a derivative § 14(a) action as a matter of federal common law, *Borak* failed to consider the role of state law in governing the permissible scope of corporate conduct.  After *Borak* was decided, the Supreme Court held that federal courts are to "presum[e] that state law should be incorporated into federal common law," particularly in areas like corporation law, "in which private parties have entered legal relationships with the expectation that their rights and obligations would be governed by state-law standards."  *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 98 (1991).  Absent contrary congressional intent, "gaps in [federal] statutes bearing on the allocation of governing power within the corporation should be filled with state law 'unless the state law permits action prohibited by the Acts, or unless its application would be inconsistent with the federal policy underlying the cause of action.'"  *Id*. at 99 (cleaned up) (quoting *Burks v. Lasker*, 441 U.S. 471, 479 (1979)).  Because derivative suits involve the allocation of power between shareholders and directors, *see Kamen*, 500 U.S. at 98, federal courts must ordinarily look to the law of the state of incorporation to determine both the authority of directors to control derivative actions, *see Burks*, 441 U.S. at 479, and the procedures for bringing such actions, even when they arise under federal law, *see Kamen*, 500 U.S. at 99.

Because gaps in federal securities statutes are generally filled with state law, *see Kamen*, 500 U.S. at 98, 108, Delaware law is relevant for determining whether shareholders may bring a derivative action to enforce a claim under § 14(a).  *Borak*'s statement that a § 14(a) action could

LEE V. FISHER                                    31

be brought as a derivative action on behalf of a corporation has been displaced by current developments in Delaware law. *See supra* Section III.A. The Delaware Supreme Court has held that a shareholder may bring a derivative action on behalf of the corporation only if the corporation suffered the alleged harm and the corporation would receive the benefit of the recovery or other remedy. *See Tooley*, 845 A.2d at 1039.[14] Applying this rule, the Delaware Supreme Court has concluded that an action asserting that "a duty of disclosure violation impaired the stockholders' right to cast an informed vote" is a direct action. *In re J.P. Morgan Chase*, 906 A.2d at 772. Therefore, the injury caused by a violation of § 14(a) gives rise to a direct action under Delaware law, not a derivative action. Nor is this application of the Delaware rule "inconsistent with the federal policy underlying the cause of action." *Kamen*, 500 U.S. at 99. Rather, because a direct § 14(a) action will satisfy the policy goal identified in *Borak*—to ensure that private parties can supplement SEC enforcement actions—the application of Delaware's rule is entirely consistent with the federal policy underlying the implied § 14(a) cause of action. *See id*. Therefore, Delaware's rule as stated in *Tooley* supersedes the federal common law rule proclaimed in *Borak*. *Id*. This development further undermines Lee's claim that there is a strong public policy of the federal forum to give shareholders a derivative § 14(a) action in this context.

---

[14] In reaching this conclusion, *Tooley* explained that an action is not considered derivative under Delaware law merely because "the injury falls equally upon all stockholders." 845 A.2d at 1037. This ruling is directly contrary to *Borak*'s reasoning that a § 14(a) action should be classified as derivative if the damage to the corporation flowed "from the deceit practiced on the stockholders as a group." 337 U.S. at 432.

3

A second development undermining *Borak*'s reasoning is the Supreme Court's shift away from implying private rights of action.  As the Supreme Court explained, *Borak* was decided during a time when the prevailing law "assumed it to be a proper judicial function to 'provide such remedies as are necessary to make effective' a statute's purpose." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017) (quoting *Borak*, 377 U.S. at 433).  But the Court has since "adopted a far more cautious course before finding implied causes of action," clarifying that, "when deciding whether to recognize an implied cause of action, the 'determinative' question is one of statutory intent," *id*. (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)), and that "[i]f the statute does not itself" provide that "Congress intended to create the private right of action asserted," no such action will "be created through judicial mandate," *id*. at 1856 (internal citation removed).  In the specific context of § 14(a) actions, the Court has also expressed second thoughts as to the propriety of establishing an implied private right of action, noting that it "would have trouble inferring any congressional urgency to depend on implied private actions to deter violations of § 14(a), when Congress expressly provided private rights of action in §§ 9(e), 16(b), and 18(a) of the same Act." *Va. Bankshares,* 501 U.S. at 1104; *see also Touche Ross & Co. v. Redington*, 442 U.S. 560, 572 (1979) ("[W]hen Congress wished to provide a private damage remedy [in the Exchange Act], it knew how to do so and did so expressly.").

Consistent with these reservations about implying private rights of action, the Supreme Court has suggested that private actions under § 14(a) should be interpreted narrowly.  In *Piper v Chris-Craft Industries, Inc.*, the Court considered an action brought under § 14(e) of the Exchange

LEE V. FISHER                                    33

Act, 15 U.S.C. § 78n(e), a provision which is similar to § 14(a) in that it prohibits misleading information in tender offers to shareholders. 430 U.S. 1, 24 (1977). The Court held that because the "sole purpose" of § 14(e) is to protect shareholders, *id*. at 35, Congress did not intend to create a remedy in favor of parties other than shareholders, such as defeated tender offerors, *id*. at 35–36. The dissent argued that this ruling was contrary to *Borak*, because "the primary beneficiaries" of § 14(a) are also individual shareholders, and yet *Borak* held that they could bring a derivative suit on behalf of the corporation. *Id*. at 66 (Stevens, J., dissenting). In response, the Court held that the dissent was "misreading" *Borak*. *Id*. at 32 n.21. As interpreted by *Piper*, *Borak* was "focusing on all stockholders[,] the owners of the corporation[,] as the beneficiaries of § 14(a)," and provided a remedy for "[s]tockholders as a class," *id*., who were "the direct and intended beneficiaries of the legislation," *id*. at 32. Thus, *Piper* suggests that *Borak* should be interpreted as fashioning a remedy analogous to a shareholder representative action or a class action, rather than a derivative action on behalf of a corporation to enforce a corporate right.

In a subsequent decision, the Court likewise refused to give an implied right of action under § 14(a) to individuals whose votes were not required by law to authorize a transaction. *See Va. Bankshares*, 501 U.S. at 1087. In that case, minority shareholders purported to bring a § 14(a) action challenging a merger, even though their votes were not required by law or by the corporation's bylaws to authorize the merger. *Id*. at 1088, 1099. The Supreme Court declined to "enlarge the scope" of the private right of action recognized in *Borak* for shareholders whose votes were unnecessary to approve the transaction that was the subject

of the proxy solicitation, and concluded that the minority shareholders lacked standing to bring a § 14(a) claim. *Id*. at 1102–03, 1104 n.11.

Although *Virginia Bankshares* was careful to state that it did not "question the holding" of *Borak*, *id.* at 1104 n.11, the implication of its ruling is clear. Under *Virginia Bankshares*, a person whose vote is not "legally required to authorize the [corporate] action proposed" lacks standing to bring a § 14(a) claim. *Id*. at 1102. Because the shareholders, not the corporation itself, vote to approve corporate transactions, this rule implies that the corporation lacks standing to sue under § 14(a) for a misleading proxy statement it has issued to its own shareholders.[15]   *See* Manesh & Grundfest (manuscript, at 60–61). If a corporation cannot bring such a § 14(a) claim, then a shareholder cannot "enforce a right that the corporation or association may properly assert but has failed to enforce," as required by Rule 23.1 for all derivative actions brought in federal court. Fed. R. Civ. P. 23.1(a). Because the express terms of Rule 23.1 supersede *Borak*'s "federal common lawmaking" for derivative actions, *Kamen*, 500 U.S. at 100 n.6, *Virginia Bankshares* casts grave doubt on whether a shareholder can bring a derivative § 14(a) action on behalf of a corporation.

---

[15]  It also appears unlikely that a corporation has standing to sue for a proxy nondisclosure violation under Delaware law, because "[a] proxy is evidence of an agent's authority to vote shares owned by another," *Eliason v. Englehart*, 733 A.2d 944, 946 (Del. 1999) (per curiam), but "a corporation may not vote its own shares," *Stream TV Networks, Inc. v. SeeCubic, Inc.*, 250 A.3d 1016, 1031 (Del. Ch. 2020); *see also* 8 Del. C. § 160(c)(1) ("Shares of a corporation's capital stock shall neither be entitled to vote nor be counted for quorum purposes if such shares belong to [t]he corporation.").

LEE V. FISHER                                    35

4

In sum, after the decision in *Borak*, the Supreme Court's jurisprudence has evolved in a way that calls into question *Borak*'s statement about derivative § 14(a) actions. First, the Court now looks to state law rather than federal common law to fill in gaps relating to federal securities claims, and under Delaware law, a § 14(a) action is direct, not derivative. Second, the Court now views implied private rights of action with disapproval, construing them narrowly, and casting doubt on the viability of a corporation's standing to bring a § 14(a) action. These jurisprudential shifts undermine any claim that there is a strong public policy favoring *Borak*'s dictum that shareholders can bring a derivative § 14(a) action. While *Borak*'s approval of implied direct § 14(a) actions to ensure shareholders' informed voting rights may survive, there is no concomitant public policy supporting a right to bring such actions derivatively.[16] Accordingly, *Borak* does not help Lee make a strong showing that enforcement of Gap's forum-selection clause "would contravene a strong public policy" of the federal forum. *M/S Bremen*, 407 U.S. at 15.

---

[16] In stating that "[t]he majority goes to great lengths to assert that *Borak* is no longer good law," Dissent 70, the dissent appears to have overlooked our entire analysis. We acknowledge that the Supreme Court has not "question[ed] the holding" of *Borak*. *See supra* 34 (quoting *Va. Bankshares*, 501 U.S. at 1104 n.11). Rather, we explain that the Supreme Court's subsequent decisions have called into question *Borak*'s dicta that a shareholder has a right to bring a derivative § 14(a) action, which supports our conclusion that there is no strong public policy in favor of such actions. *See supra* 34–35. The dissent fails to address this analysis or otherwise explain why there is some basis for a strong public policy in favor of derivative § 14(a) actions after *Kamen* and *Virginia Bankshares*.

C

Lee points to a second federal policy that she claims creates the requisite "extraordinary circumstances" sufficient to preclude enforcement of Gap's forum-selection clause. *Atl. Marine*, 571 U.S. at 52. According to Lee, the forum-selection clause conflicts with the federal forum's strong public policy of giving federal courts exclusive jurisdiction over Exchange Act claims under § 27(a). This argument also fails.

First, the Supreme Court has indicated that there was "no specific purpose on the part of Congress in enacting § 27." *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 383 (1996). At most, the Court has "presume[d] . . . that Congress intended § 27 to serve . . . the general purposes underlying most grants of exclusive jurisdiction: 'to achieve greater uniformity of construction and more effective and expert application of that law.'" *Id.* (quoting *Murphy v. Gallagher*, 761 F.2d 878, 885 (2d Cir. 1985)). Because enforcing Gap's forum-selection clause would require Lee to bring her derivative action in the Court of Chancery, which would lead to its dismissal for lack of jurisdiction, "[t]here is no danger that state court judges who are not fully expert in federal securities law will say definitively what the Exchange Act means and enforce legal liabilities and duties thereunder," and "the uniform construction of the Act [will be] unaffected . . . because the state court [will] not adjudicate the Exchange Act claims." *Id.* And because enforcing Gap's forum-selection clause does not threaten the presumed policies embedded in § 27(a), there is no conflict with § 27(a) that constitutes an extraordinary circumstance requiring non-enforcement of Gap's forum-selection clause.

LEE V. FISHER                                    37

Second, Lee argues that, in light of § 27(a), Gap's forum-selection clause constitutes a waiver of her right to pursue "statutory remedies" under § 14(a), which is contrary to public policy. She relies on a footnote from the Supreme Court's decision in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, which considered the argument that two clauses in a sales agreement—one providing for arbitration before a foreign tribunal, and the other providing that the agreement would be governed by foreign law—would "wholly . . . displace" American antitrust law. 473 U.S. 614, 637 n.19 (1985). Because the plaintiff, a foreign corporation, conceded that American law applied to the antitrust claims, the Court rejected this argument, but stated in a footnote that "in the event the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, [it] would have little hesitation in condemning the agreement as against public policy."[17] *Id.*

---

[17] We clarify that the statement in *Sun* that "the strong federal policy in favor of enforcing forum-selection clauses would supersede antiwaiver provisions in state statutes as well as federal statutes," 901 F.3d at 1090, is subject to the caveat in *Mitsubishi Motors*—that a forum-selection clause that purports to override an express federal statutory remedy or a non-waivable statutory right would fail as being "against public policy," 473 U.S. at 637 n.19. Thus, to the extent that enforcing a forum-selection clause would conflict with an applicable federal antiwaiver provision, a court is bound to enforce the statute, notwithstanding the strong policy in favor of enforcing forum-selection clauses. *See Atl. Marine*, 571 U.S. at 63. This is consistent with the well-established principles that federal courts "have no license to depart from the plain language" of statutes, *United States v. Rutherford*, 442 U.S. 544, 555 (1979), and that "policy concerns cannot trump the best interpretation of the statutory text," *Patel v. Garland*, 142 S. Ct. 1614, 1627 (2022). In any event, because § 29(a) does not void Gap's forum-selection clause, *see supra* Section III.A, our decision does not raise any concern about elevating "a judge-made

38 LEE V. FISHER

Reading the *Mitsubishi Motors* footnote together with § 27(a)'s grant of exclusive federal jurisdiction for claims brought under § 14(a), Lee argues that enforcing Gap's forum-selection clause would be an unlawful "prospective waiver" of her right to pursue a statutory remedy in federal court.

Lee's argument is unavailing.[18] First, unlike *Mitsubishi Motors*, where a forum-selection clause and choice-of-law provision had the potential to "wholly . . . displace" federal antitrust law, and thus prevent a party to a sales agreement from bringing a statutory antitrust claim, the forum-selection clause and exclusive jurisdiction provision at issue here have no such potential effect. To the contrary, as we have explained, a shareholder may bring a § 14(a) claim against Gap as a direct action in federal court despite Gap's forum-selection clause. Moreover, while Congress gave private individuals a statutory right to bring a private antitrust action, *see* 15 U.S.C. § 15(a), Congress did not provide such a statutory remedy for a derivative § 14(a) action, contrary to Lee's assertion that "[a] derivative claim for [a] violation of § 14(a) is . . . a substantive provision of the Exchange Act." Nor did *Borak* hold that Congress intended to provide such a remedy. *See Va. Bankshares*, 501 U.S. at 1103 ("*Borak*'s probe of the congressional mind . . . never focused

---

federal policy" over "the plain language of the Exchange Act." Dissent 56.

[18] We have already rejected en banc a similar attempt to overstate the meaning of the *Mitsubishi Motors* footnote in a manner that would override *M/S Bremen*. *See Richards*, 135 F.3d at 1295 ("[W]e do not believe dictum in a footnote regarding antitrust law outweighs the extended discussion and holding in [*M/S Bremen* and its progeny] on the validity of clauses specifying the forum and applicable law.").

squarely on private rights of action, as distinct from the substantive objects of the legislation . . . ."). Therefore, the Supreme Court's statements in *Mitsubishi Motors* suggesting the existence of a strong public policy to protect a party's right to a statutory antitrust remedy (comments that were not necessary to the case before it) are inapposite here.

Because we reject each of Lee's arguments that a strong public policy of the federal forum would be violated by enforcement of Gap's forum-selection clause, we conclude that Lee has "not carried [he]r heavy burden of showing the sort of exceptional circumstances that would justify disregarding a forum-selection clause." *Sun*, 901 F.3d at 1084.

## D

We now turn to the question whether Gap's forum-selection clause is invalid as a matter of Delaware law under Section 115 of the DGCL.

### 1

We begin with some background. The Delaware General Assembly enacted Section 115 in 2015 to authorize forum-selection clauses. As explained, in the early 2010s, corporations began adopting forum-selection clauses in their bylaws as a response to a steep rise in multiforum litigation. *See supra* **Section II**. In 2013, the Court of Chancery upheld, under Delaware law, the statutory and contractual validity of forum-selection clauses "providing that litigation relating to [corporations'] internal affairs should be conducted in Delaware." *Boilermakers*, 73 A.3d at 937–39. *Boilermakers* held that the forum-selection clauses at issue were authorized by "the broad subjects that [Section] 109(b) [of the DGCL] permits bylaws to address," *id*. at 950, which

are those "relating to the business of the corporation, the conduct of its affairs, and its rights or powers or the rights or powers of its stockholders, directors, officers or employees," 8 Del. C. § 109(b). *Boilermakers* reasoned that the bylaws of Delaware corporations "typically . . . direct how the corporation, the board, and its stockholders may take certain actions," 73 A.3d at 951, and that the forum-selection bylaws at issue "fit this description" because they were "process-oriented" and "regulate[d] *where* stockholders may file suit," *id*. at 951–52. The Court of Chancery also rejected the plaintiffs' argument that the bylaws were contractually invalid because they were adopted unilaterally by the directors without a shareholder vote, concluding "that forum-selection bylaws are, as a facial matter of law, contractually binding." *Id*. at 957–58.

While *Boilermakers* did not address "situations when the forum-selection bylaws . . . could somehow preclude a plaintiff from bringing a claim that must be brought exclusively in a federal court," *id*. at 961, it discussed a hypothetical question, raised by the plaintiffs, as to whether a forum-selection clause would be invalid if a Rule 14a-9 claim were brought against a corporation in federal court and the defendants moved to dismiss the complaint because of a forum-selection clause, *id*. at 962. But the Court of Chancery expressly "decline[d] to wade deeper into imagined situations involving multiple 'ifs,'" *id*. at 962, and left questions regarding the enforceability of forum-selection clauses "in some future situation" to be resolved another day, *id*. at 963.

Two years later, the Delaware legislature enacted Section 115 as part of its 2015 amendments to the DGCL, which "were intended, in part, to codify *Boilermakers*." *Salzberg v. Sciabacucchi*, 227 A.3d 102, 117 (Del. 2020);

*see also Solak v. Sarowitz*, 153 A.3d 729, 732 (Del. Ch. 2016). Section 115 states in relevant part that a corporation's "bylaws may require, consistent with applicable jurisdictional requirements, that any or all internal corporate claims shall be brought solely and exclusively in any or all of the courts in this State." 8 Del. C. § 115.[19] It defines "internal corporate claims" as "including claims in the right of the corporation," which means claims "that are based upon a violation of a duty by a current or former director or officer or stockholder in such capacity," as well as claims "as to which [the DGCL] confers jurisdiction." *Id.* Section 115 prohibits bylaws that forbid a plaintiff from bringing such internal corporate claims in Delaware courts. *Id.*

An official synopsis accompanies Section 115 and the other 2015 amendments to the DGCL. *See* S.B. 75, 148th Gen. Assembly, Regular Session (Del. 2015) (synopsis). Although, under Delaware law, "[a] synopsis is a proper source for ascertaining legislative intent," the Delaware

---

[19] Section 115 of the DGCL provides in full:

> The certificate of incorporation or the bylaws may require, consistent with applicable jurisdictional requirements, that any or all internal corporate claims shall be brought solely and exclusively in any or all of the courts in this State, and no provision of the certificate of incorporation or the bylaws may prohibit bringing such claims in the courts of this State. "Internal corporate claims" means claims, including claims in the right of the corporation, (i) that are based upon a violation of a duty by a current or former director or officer or stockholder in such capacity, or (ii) as to which this title confers jurisdiction upon the Court of Chancery.

Supreme Court considers the synopsis only if it "finds that the statutory language is ambiguous and requires interpretation." *Bd. of Adjustment of Sussex Cnty. v. Verleysen*, 36 A.3d 326, 332 (Del. 2012). The portion of the synopsis pertaining to Section 115 summarizes that section and provides certain clarifications. In addition to stating that Section 115 is intended to codify the holding of *Boilermakers*, the synopsis interprets the term "internal corporate claims" as "claims arising under the DGCL, including claims of breach of fiduciary duty by current or former directors or officers or controlling stockholders of the corporation." S.B. 75 (synopsis). The synopsis also provides a list of what Section 115 is not intended to do; among other things, the section is "not intended to authorize a provision that purports to foreclose suit in a federal court based on federal jurisdiction." *Id.*

In 2020, the Delaware Supreme Court addressed the scope of Section 115 in *Salzberg*. *Salzberg* analyzed forum-selection clauses that required certain claims to be brought in federal court (referred to as federal forum provisions, or FFPs), and held that such clauses were not prohibited by Section 115. 227 A.3d at 109, 120. *Salzberg* based this conclusion in part on its interpretation of the phrase "internal corporate claims" in Section 115 as "likely . . . intended to address claims requiring the application of Delaware corporate law as opposed to federal law." *Id.* at 120 n.79. The Delaware Supreme Court did "not think the General Assembly intended to encompass federal claims within the definition of internal corporate claims[,]" and thus concluded that "Section 115 [wa]s not implicated" by the FFPs at issue. *Id. Salzberg*'s interpretation of the term "internal corporate claims" was integral to the Delaware Supreme Court's reasoning and outcome, because, as the

court acknowledged, if the term "internal corporate claims" encompassed federal claims, "then arguably, [the FFPs] would run afoul of Section 115's requirement that 'no provision of the certificate of incorporation or the bylaws may prohibit bringing such [internal corporate] claims in the courts of this State.'" *Id.* at 133 n.146 (quoting 8 Del. C. § 115). In other words, because FFPs prohibit plaintiffs from bringing certain federal claims in Delaware courts, the FFPs would conflict with Section 115, which requires corporate bylaws to allow *all* internal corporate claims to be brought in Delaware courts. *See* 8 Del. C. § 115. But since federal claims are not "internal corporate claims" under Section 115, *Salzberg* dictates that courts "must look elsewhere . . . to determine whether [a forum-selection bylaw] is permissible," because "Section 115, read fairly, does not address the propriety of forum-selection provisions applicable to other types of claims." 227 A.3d at 119.

*Salzberg* also made clear that Section 115 is a permissive, rather than restrictive, statute. The Delaware Supreme Court explained that "Section 115 simply clarifies that *for certain claims*, Delaware courts may be the only forum, but they cannot be excluded as a forum." *Id.* at 118. Thus, Section 115, as interpreted by *Salzberg*, permits the use of specified forum-selection clauses, but does not implicitly forbid other such clauses unless they prevent a plaintiff from bringing state-law claims in Delaware courts. Indeed, *Salzberg* rejected the argument "that a forum-selection provision not expressly permitted by Section 115 . . . is implicitly prohibited." *Id.* at 119–20. Rather, *Salzberg* reiterated "that forum-selection clauses are presumptively valid and enforceable under Delaware law." *Id.* at 132. *Salzberg* based its analysis in part on the broad scope of Section 109(b) of the DGCL, *see* 227 A.3d at 122–23, which

authorizes a corporation to enact any bylaw "not inconsistent with law or with the certificate of incorporation," as long as it relates to the "rights or powers" of the corporation's main stakeholders, 8 Del. C. § 109(b). Thus, according to *Salzberg*, Section 115's "permissive provision [did not] define[] the whole universe of permitted forum-selection provisions." 227 A.3d at 120. *Salzberg* likewise made clear that *Boilermakers*, which was codified by Section 115, "did not establish the outer limit of what is permissible under . . . Section 109(b)." *Id*. at 123.

2

Before addressing the effect of Section 115 on Gap's forum-selection clause, we must first determine whether we should exercise our discretion to do so. Lee failed to identify Section 115 in her opening brief before the panel, which was filed before the Seventh Circuit issued its opinion in *Seafarers Pension Plan ex rel. Boeing Co. v. Bradway,* striking down a materially similar forum-selection clause to Gap's as invalid under Section 115. 23 F.4th 714 (7th Cir. 2022). Following *Seafarers*, Lee raised arguments under Section 115 for the first time in her reply brief. After we voted to rehear this case en banc, Gap moved to file supplemental briefing on certain issues, and Lee cross-moved for supplemental briefing on the application of Section 115. We granted in part the parties' cross-motions and ordered supplemental briefing on, among other topics, "the application of 8 Del. Code § 115." Accordingly, the Section 115 issue is fully briefed by both parties.

We have long held that we may exercise our discretion to address significant questions presented to the en banc panel that were not considered by the three-judge panel. *See United States v. Hernandez-Estrada*, 749 F.3d 1154, 1159–

LEE V. FISHER                                    45

60 (9th Cir. 2014) (en banc). Thus, we have discretion to consider the Section 115 issue, which is of sufficient importance that we ordered the parties to address it in supplemental briefing. *See Socop-Gonzalez v. INS*, 272 F.3d 1176, 1186 n.8 (9th Cir. 2001) (en banc). The party-presentation principle is not implicated here because the parties themselves have "frame[d] the issue for decision." *Cf. United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020). When we rehear a case en banc, we do "not review the original panel decision, nor [do we] overrule the original panel decision," but rather we "act[] as if we were hearing the case on appeal for the first time," and can thus consider new issues that have been "unquestionably raised . . . before the *en banc* court." *Socop-Gonzalez*, 272 F.3d at 1186 n.8. Therefore, although the three-judge panel deemed the Section 115 issue to be waived, *see Lee*, 34 F.4th at 782, we are not obliged to follow suit.

We conclude that the effect of Section 115 is important to our decision here. Federal courts generally defer to the law of the state of incorporation for issues involving "a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders." *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982). Accordingly, "[state] law controls the legal issue on the validity of the challenged by-law." *Groves v. Prickett*, 420 F.2d 1119, 1122 (9th Cir. 1970). If Gap's bylaw is invalid under Delaware law, as Lee now claims, then the district court erred in enforcing it. If we fail to address this issue, then our analysis of whether Gap's forum-selection clause can validly prevent Lee from bringing a derivative § 14(a) action in federal court would be incomplete. We therefore elect "to

exercise our discretion to decide the issue *en banc*." *Hernandez-Estrada*, 749 F.3d at 1160.

### 3

We now turn to the question whether Gap's forum-selection clause is invalid under Section 115 of the DGCL.

On its face, Section 115 is inapplicable here, because it does not address the validity of a forum-selection clause's effect on federal claims. Section 115 provides that a corporation's bylaws "may require . . . that any or all internal corporate claims shall be brought solely and exclusively in any or all of the courts in this State." 8 Del. C. § 115. According to *Salzberg*, the phrase "internal corporate claims" in Section 115 refers to "claims requiring the application of Delaware corporate law, as opposed to federal law." 227 A.3d at 120 n.79. The official synopsis to the 2015 amendments to the DGCL, which included Section 115 and on which Lee relies, is consistent with this interpretation, stating that the term "internal corporate claims" means "claims arising under the DGCL." S.B. 75 (synopsis). By its terms, this language does not prevent a forum-selection clause from requiring that a *federal claim*, which is not an internal corporate claim, be brought in Delaware state court.

Lee mentions *Salzberg* only in passing and does not address *Salzberg*'s interpretation of the phrase "internal corporate claims" as referring to claims brought under Delaware law, rather than federal law. Instead, Lee argues that the text of Section 115, when read together with the synopsis and the Delaware Supreme Court's statements in *Boilermakers*, raises the strong inference that Section 115 precludes a forum-selection clause from requiring a federal claim such as § 14(a) to be brought in state court, when the

state court would be obliged to dismiss it for lack of jurisdiction.  Specifically, Lee asserts that Section 115 states that a forum-selection clause must be "consistent with applicable jurisdictional requirements," and the synopsis warns that Section 115 is "not intended to authorize a provision that purports to foreclose suit in a federal court based on federal jurisdiction."  Because Gap's forum-selection clause eliminates federal jurisdiction over her derivative § 14(a) claim, Lee contends, it is not consistent with applicable jurisdictional requirements and does exactly what § 115 was "not intended to authorize."  Lee further notes that *Boilermakers* recognized that a forum-selection clause that precluded federal jurisdiction over a Rule 14a-9 action could raise jurisdictional issues, and she argues that the language in *Boilermakers* about how a corporation invoking a forum-selection clause against such a claim might have "trouble," 73 A.3d at 962, further indicates that such a clause would be disfavored.

We reject Lee's arguments regarding Section 115.  First, *Salzberg* makes clear that "internal corporate claims," as defined in Section 115, refers only to claims brought under Delaware, rather than federal, law.  227 A.3d at 120 n.79.  Given *Salzberg*'s authoritative interpretation of Section 115, we must read that section as addressing only state-law claims and authorizing them to be brought in "any or all" state courts, "consistent with applicable jurisdictional requirements."  8 Del. C. § 115.  Under this approach, Section 115 is silent on whether or not bylaws may require federal claims to be brought in state courts or whether forum-selection clauses governing federal claims must be consistent with applicable jurisdictional requirements.  Moreover, because *Salzberg* makes clear that Section 115 is a permissive, rather than restrictive, statute, we may not

interpret its silence on the issue of federal claims as prohibiting the application of forum-selection clauses to such claims. *See* 227 A.3d at 120 (rejecting the notion that "Section 115's permissive provision defines the whole universe of permitted forum-selection provisions"). Again, Lee misinterprets Section 115 as a restrictive statute that sets the outer limit of allowable forum-selection clauses, rather than a merely permissive one, as explained by *Salzberg*.

Lee's reliance on the official synopsis accompanying the 2015 amendments to the DGCL is also misplaced. Applying the Delaware Supreme Court's interpretative framework characterizing Section 115 as permissive, the synopsis's warning that "Section 115 is . . . not intended to authorize a provision that purports to foreclose suit in a federal court based on federal jurisdiction," S.B. 75 (synopsis), means only that Section 115 does not create a legislative safe-harbor for forum-selection clauses that requires claims to be brought in forums that lack jurisdiction over them. By their terms, these statements in the synopsis neither authorize nor prohibit a forum-selection clause that would preclude bringing an action in federal court. *See Salzberg,* 227 A.3d at 120–21. We also reject Lee's argument that the forum-selection clause was not authorized by Section 109(b) because Section 115 is a more specific statute, and thus supersedes Section 109(b), which is more general. This argument is contrary to *Salzberg*, which held that "[f]orum provisions were valid [under Section 109(b)] prior to Section 115's enactment," *id.* at 120, and Section 115 "did not establish the outer limit of what is permissible under . . . Section 109(b)," *id.* at 123. Therefore, *Salzberg* concluded, Section 109(b) was broad enough to authorize the forum-selection clause at issue, notwithstanding Section

LEE V. FISHER                                    49

115. *Salzberg*'s reasoning applies with equal force to authorize Gap's forum-selection clause.

*Boilermakers* is not to the contrary. There, the Court of Chancery held that forum-selection clauses "providing that litigation relating to [corporations'] internal affairs should be conducted in Delaware," 73 A.3d at 937, were statutorily and contractually valid under Delaware law, *id.* at 963, and the court did not place conditions on their use. Years later, *Salzberg* confirmed that *Boilermakers* did not place limitations on the scope of forum-selection clauses. *See* 227 A.3d at 119, 122–23. Following (and codifying) *Boilermakers*, Section 115 thus approves forum-selection clauses "consistent with applicable jurisdictional requirements," without imposing any specific carve-outs or restrictions for the hypothetical scenarios considered in *Boilermakers*, other than clarifying that Delaware state courts cannot be excluded as a forum for state-law "internal corporate claims." 8 Del. C. § 115.

Accordingly, because the Delaware Supreme Court has indicated that federal claims like Lee's derivative § 14(a) action are not "internal corporate claims" as defined in Section 115, and because no language in *Boilermakers*, Section 115, or the official synopsis operates to limit the scope of what constitutes a permissible forum-selection bylaw under Section 109(b), we conclude that Gap's forum-selection clause is valid under Delaware law.

E

In reaching this conclusion, we part ways with the Seventh Circuit's decision in *Seafarers*. 23 F.4th 714. In that case, the plaintiff filed a "derivative suit on behalf of Boeing under [§] 14(a) . . . alleg[ing] that Boeing officers and board members made materially false and misleading

public statements about the development and operation of the 737 MAX in Boeing's 2017, 2018, and 2019 proxy materials." *Id*. at 717. The district court, in reliance on Boeing's forum-selection clause, dismissed the action on forum non conveniens grounds. *Id*. at 718.[20]

The Seventh Circuit reversed, holding that "[t]he most straightforward resolution of this appeal is under Delaware corporation law, which we read as barring application of the Boeing forum bylaw to this case invoking non-waivable rights under the federal Exchange Act." *Id*. at 719. In holding that Boeing's forum-selection clause violated Section 115, the Seventh Circuit reasoned that a derivative § 14(a) action qualified as an "internal corporate claim," and Section 115 required forum-selection clauses applying to internal corporate claims to be "consistent with applicable jurisdictional requirements." *Id.* at 720. According to the Seventh Circuit, Boeing's forum-selection clause was not consistent with Section 115's requirement because the clause violated the applicable jurisdictional requirement imposed by § 27(a), which gives federal courts exclusive jurisdiction over a § 14(a) claim. *Id*. Relying on the synopsis, *Seafarers* stated that "Section 115 does not

---

[20] Boeing's forum-selection clause provided in relevant part:

> With respect to any action arising out of any act or omission occurring after the adoption of this By-Law, unless the Corporation consents in writing to the selection of an alternative forum, the Court of Chancery of the State of Delaware shall be the sole and exclusive forum for . . . any derivative action or proceeding brought on behalf of the Corporation . . . .

*Seafarers*, 23 F.4th at 718 (alterations in original).

authorize use of a forum-selection bylaw to avoid what should be exclusive federal jurisdiction over a case, particularly under the Exchange Act." *Id.* at 721. Rather, the Seventh Circuit explained, "[b]y eliminating federal jurisdiction over the [plaintiff]'s exclusively federal derivative claims, Boeing's forum bylaw forecloses suit in a federal court based on federal jurisdiction," and "[t]hat's exactly what Section 115 was 'not intended to authorize.'" *Id.* at 720 (quoting S.B. 75 (synopsis)). The Seventh Circuit rejected the argument that the forum-selection clause was authorized by Section 109(b), because it deemed that section to be superseded by the more specific provisions in Section 115, *id.* at 721–22, and held that *Salzberg* did not apply to claims brought under the Exchange Act, *id.* at 722. According to the Seventh Circuit, the statements in *Boilermakers* addressing "hypothetical situations where the challenged bylaws would operate" to preclude plaintiffs from bringing derivative § 14(a) actions made clear that *Boilermakers* did not "authorize enforcement of a forum-selection provision like the Boeing forum bylaw in a case like this one," *id.* at 723, and "that Delaware is not inclined to enable corporations to close the courthouse doors entirely on derivative actions asserting federal claims subject to exclusive federal jurisdiction," *id.* at 724.

As to federal law, the Seventh Circuit concluded that the ability to bring a derivative § 14(a) action was a non-waivable statutory right under the Exchange Act. *Id.* at 719, 725; *see also id.* at 728 (warning "against using choice-of-forum and choice-of-law clauses to attempt prospective waivers of federal statutory remedies"). The Seventh Circuit stated that enforcing Boeing's forum-selection clause would be "difficult to reconcile with [§] 29(a)" because the clause required the plaintiff to bring a derivative § 14(a) action in

the Delaware Court of Chancery, which lacked jurisdiction to hear it—and thus effectively "checkmate for defendants." *Id*. at 720. The Seventh Circuit also gave *Borak* an expansive reading, reasoning that enforcing Boeing's forum-selection clause would run contrary to "*Borak*'s recognition of derivative claims under [§] 14(a)." *Id*. at 728.

For the reasons we have explained above, we disagree with *Seafarers*'s interpretation of both state and federal law. First, the Seventh Circuit's analysis of Delaware law is flawed because the court failed to consider and apply *Salzberg*'s reasoning and conclusions. The Seventh Circuit ignored *Salzberg*'s statement that Section 115's reference to "internal corporate claims" does not include federal claims, and thus that Section 115 is "not implicated" by a forum-selection clause governing federal claims. 227 A.3d at 120 n.79. By failing to recognize *Salzberg*'s interpretation of "internal corporate claims," the Seventh Circuit mistakenly asserted that *Salzberg* would not "allow application of the forum bylaw to a case" requiring derivative actions to be brought in Delaware courts because "it would effectively bar [a] plaintiff from bringing its derivative claims under the [Exchange] Act in *any* forum." 23 F.4th at 722. To the contrary, as we have explained, *Salzberg* made clear that Section 115 has no application to actions brought under federal law. 227 A.3d at 120 n.79.

For the same reason, the Seventh Circuit erred in stating that "[n]othing in *Salzberg* suggests it would extend Section 109 . . . to allow application of the forum bylaw to a case like this one." *Seafarers*, 23 F.4th at 722. In fact, *Salzberg* stated that its prior cases had not limited the scope of Section 109(b). 227 A.3d at 122–23. Further, the Seventh Circuit failed to recognize *Salzberg*'s interpretation of Section 115 and Section 109(b) as being permissive statutes, rather than

restrictive statutes defining "the outer limit of what is permissible" or otherwise precluding federal claims.  *Id.* at 124.

*Salzberg* also confirmed that *Boilermakers* held that a forum-selection bylaw is valid so long as it "regulate[s] *where* stockholders may file suit," and "plainly relate[s] to the 'business of the corporation[],' the 'conduct of [its] affairs,' and regulate[s] the 'rights and powers of [its] stockholders.'" *Id.* at 115 n.51 (quoting *Boilermakers*, 73 A.3d at 939, 950–52).  Contrary to *Seafarers*, 23 F.4th at 722, *Salzberg*'s statements regarding the applicability of Section 109(b), 227 A.3d at 122–23, were not limited to Securities Act claims, but applied to any forum-selection clause, regardless of the type of federal claims it covered. The Seventh Circuit also erred in relying on statements in *Boilermakers* about a hypothetical situation involving a § 14(a) action as "signal[ing] clearly enough that Delaware law would not look kindly" on enforcement of the forum-selection clause at issue.  *Seafarers*, 23 F.4th at 724.  To the contrary, *Boilermakers* made clear that it would not "render [an] advisory opinion[] about hypothetical situations that may not occur," and that there was no "principled basis to complete the law school hypotheticals posed by the plaintiffs."  73 A.3d at 959.

Because the Seventh Circuit's reliance on Section 115 and *Boilermakers* to invalidate the forum-selection clause at issue runs contrary to the Delaware Supreme Court's reasoning in *Salzberg*, we reject it.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983) (per curiam) ("[T]he views of the state's highest court with respect to state law are binding on the federal courts.").

The Seventh Circuit's application of federal law was also mistaken. In stating that enforcing the bylaw at issue would serve as "checkmate for defendants" by preventing the plaintiff from bringing a derivative § 14(a) action in any forum, and thus effect an invalid waiver under § 29(a), *Seafarers* failed to recognize the availability of a direct § 14(a) action. 23 F.4th at 720. The *Seafarers* majority did not mention the possibility of a direct § 14(a) action, even though Judge Easterbrook's well-reasoned dissent pointed out this flaw, explaining that "[n]othing in Boeing's bylaw strips plaintiff, as a recipient of proxy materials, of the ability to file a direct § 14(a) action in federal court[,]" and therefore "it is hard to see how [plaintiff] has been deprived of a right to enforce § 14(a)." *Id.* at 729 (Easterbrook, J., dissenting).

The Seventh Circuit also misread *Borak* by implying that it empowers plaintiffs to bring "derivative actions asserting rights of a corporation harmed by a violation" of § 14(a). *Id.* at 719; *see also id.* at 728. In reaching this conclusion, the Seventh Circuit overlooked both the absence of Supreme Court support for such a policy in subsequent caselaw, as well as the post-*Borak* developments in the Supreme Court's jurisprudence described above. The Seventh Circuit did not consider the effect of Delaware law on the classification of a claim as direct or derivative, as required by *Burks* and *Kamen*, it made no mention of the oft-repeated Supreme Court instruction to construe implied private rights of action narrowly, and it failed to reckon with the impact of *Virginia Bankshares* on a corporation's ability to assert a derivative § 14(a) action. Accordingly, the Seventh Circuit's implication that *Borak* created a strong public policy of the federal forum to allow derivative § 14(a) actions lacks any persuasive support.

LEE V. FISHER                               55

Finally, *Seafarers* erred by placing decisive weight on *Mitsubishi Motors*'s statement that a party cannot prospectively waive a federal statutory remedy as weighing against allowing forum-selection clauses to "foreclose entirely [a] plaintiff's derivative [§] 14(a) claims." 23 F.4th at 725. As we have explained, Congress did not give shareholders any statutory remedy in § 14(a), and in any event, a plaintiff may vindicate shareholder rights under § 14(a) by bringing the claim as a direct action in federal court.

Because *Seafarers* failed to apply *Salzberg* correctly, and did not consider the implications of the availability of a direct § 14(a) action, *Seafarers*'s analysis is flawed. We therefore decline to follow *Seafarers*.

                         IV

In conclusion, we hold that Gap's forum-selection clause is not void as an invalid waiver under § 29(a) nor unenforceable under *M/S Bremen* due to violation of the federal forum's strong public policy. We also hold that Gap's bylaw is not contrary to Delaware law. "We acknowledge that our decision creates a circuit split [with the Seventh Circuit], and we do not do this lightly." *In re Penrod*, 611 F.3d 1158, 1161 (9th Cir. 2010). Nonetheless, for the foregoing reasons, we affirm the district court's dismissal of Lee's case on forum non conveniens grounds.

    **AFFIRMED.**

S.R. THOMAS, Circuit Judge, with whom MURGUIA, Chief Judge, and NGUYEN, FRIEDLAND, and MENDOZA, Circuit Judges, join, dissenting:

The Gap Inc.'s ("Gap") forum-selection bylaw requires that any derivative actions brought pursuant to the Securities Exchange Act of 1934 (the "Exchange Act") be adjudicated in the Delaware Court of Chancery. But state courts lack jurisdiction to hear Exchange Act claims, so the bylaw provision is a litigation bridge to nowhere, depriving shareholders of any forum in which to pursue derivative claims. The majority concludes that Gap's bylaw is both valid and enforceable. However, a judge-made federal policy in favor of enforcing forum-selection clauses cannot supersede the clear antiwaiver provision enacted by Congress in the Exchange Act, which voids such a provision. The majority's conclusion conflicts with the plain language of the Exchange Act. Therefore, for this and other reasons, I respectfully dissent.

I

The Exchange Act serves "to insure honest securities markets and thereby promote investor confidence." *Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 390 (2014) (citation omitted). Section 27(a) of the Exchange Act provides federal courts with exclusive jurisdiction over claims resulting from "violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder." 15 U.S.C. § 78aa(a). The Supreme Court has stated that "the statute plainly mandates that suits alleging violations of the Exchange Act may be maintained only in federal court" and "prohibits state courts from adjudicating claims arising

LEE V. FISHER                                                57

under the Exchange Act." *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 381 (1996).

Additionally, Section 29(a) of the Act contains a forceful antiwaiver provision that voids any private agreement endeavoring to waive compliance with the statute: "Any condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of a self-regulatory organization, shall be void." 15 U.S.C. § 78cc(a).

"[T]he first question" is "whether § [29(a)] itself controls [Gap's] request to give effect to the parties' contractual choice of venue." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *see DePuy Synthes Sales, Inc. v. Howmedica Osteonics Corp.*, 28 F.4th 956, 961–65 (9th Cir.), *cert. denied*, 143 S. Ct. 536 (2022). Thus, because any analysis of a forum-selection clause's enforceability "presupposes a contractually valid forum-selection clause," *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 n.5 (2013), we must first determine whether Gap's bylaw is valid.

Contrary to the majority's conclusion, Gap's bylaw is invalid under federal law. The antiwaiver provision of the Exchange Act voids Gap's forum-selection bylaw because the bylaw deprives Plaintiff-Appellant Noelle Lee of the ability to bring her derivative claim under § 14(a) of the Exchange Act in any forum—thereby resulting in complete waiver of the claim.

A

The Supreme Court has held that the antiwaiver provision "prohibits waiver of the substantive obligations imposed by the Exchange Act." *Shearson/Am. Exp., Inc. v.*

58                    LEE V. FISHER

*McMahon*, 482 U.S. 220, 228 (1987). An agreement waives substantive rights if it "weaken[s] [the parties'] ability to recover under the [Exchange] Act;" indeed, such an effect "is grounds for voiding the agreement under § 29(a)." *Id.* at 230–31 (citation omitted).

By rerouting Exchange Act claims to the Delaware Court of Chancery, a forum that lacks any power to adjudicate them, Gap's forum-selection clause does not merely "weaken" the substantive right to recover under the Act, but eliminates it altogether. Accordingly, enforcement of Gap's forum-selection clause deprives investors of "an adequate means of enforcing the provisions of the Exchange Act." *Id.* at 229.

Gap concedes that enforcing the forum-selection clause results in dismissal of all derivative claims. Thus, the forum-selection clause violates the antiwaiver provision by "defeat[ing] the claim[] entirely." *Seafarers Pension Plan ex rel. Boeing Co. v. Bradway*, 23 F.4th 714, 720 (7th Cir. 2022); *see Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 637 n.19 (1985) (noting "that in the event the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy").

The fact that the forum-selection clause eviscerates derivative actions should end the analysis under the Exchange Act's antiwaiver provision. However, Gap contends that its forum-selection clause does not violate any substantive obligations of the Exchange Act for two reasons: (1) Because Lee could theoretically bring a direct action, the Exchange Act's antiwaiver provision does not prohibit the

LEE V. FISHER                           59

waiver of a derivative suit, and (2) judicially created preferences for enforcing forum-selection clauses trump the plain language of the Exchange Act's antiwaiver provision.

But Gap—and the majority—are wrong on both counts.

1

Gap's argument that its forum-selection bylaw does not waive compliance with the Exchange Act because Lee could bring a direct, rather than derivative, claim is contrary to the plain language of the Exchange Act and binding precedent.

First, the Exchange Act requirements are clear. The antiwaiver provision voids "*[a]ny* condition, stipulation, or provision" that serves "to waive compliance with *any* provision of this chapter." 15 U.S.C. § 78cc(a) (emphases added). The statute does not include the qualification "unless there are alternate remedies available." When the statutory language is plain, courts "have no right to insert words and phrases, so as to incorporate in the statute a new and distinct provision." *United States v. Temple*, 105 U.S. 97, 99 (1881); *see also United States v. Watkins*, 278 F.3d 961, 965 (9th Cir. 2002) ("[A] court should not read words into a statute that are not there."); *Stanton Rd. Assocs. v. Lohrey Enters.*, 984 F.2d 1015, 1020 (9th Cir. 1993) (noting that the Supreme Court has instructed this Court that we lack the power to "read into the statute words not explicitly inserted by Congress"). There is no provision in the Exchange Act that limits the scope of the antiwaiver language.

Second, direct and derivative stockholder actions are distinct, with different purposes and different remedies. In a direct action, the plaintiff shareholder—on behalf of herself and typically a class of shareholders—seeks damages,

usually as compensation for loss in stock value, based on securities law violations, fraud, or other causes of action. *See, e.g.*, *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 263–65 (2014). By contrast, a derivative action allows an individual shareholder "to step into the corporation's shoes and to seek in its right the restitution he could not demand in his own," *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 548 (1949), by asserting a cause of action on behalf of the corporation, against its officers, directors, or third parties.

Direct and derivative suits are not interchangeable: The derivative suit was "[d]evised as a suit in equity . . . to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of faithless directors and managers." *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 95 (1991) (internal quotation marks and citation omitted). Under Delaware law, the determination of whether a stockholder's claim is direct or derivative "must turn *solely* on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004).

Perhaps, in a sense, every injury to a corporation also injures the shareholders, at least to the extent that it undermines the corporation's business and reduces its value. But Delaware law identifies the key question for direct actions as "whether the stockholder has demonstrated that he or she has suffered an injury that is not dependent on an injury to the corporation." *Brookfield Asset Mgmt., Inc. v. Rosson*, 261 A.3d 1251, 1263 (Del. 2021). And unlike in direct suits, the remedies available through derivative

LEE V. FISHER                                    61

actions, such as corporate-governance reforms and any payment, "flow[] only to the corporation." *Tooley*, 845 A.2d at 1036.

Derivative suits provide an important and distinct avenue for holding officers and directors accountable for violations of federal law, and future challengers may be able to assert only derivative claims because of the type of harm at issue. In such cases, Gap's forum-selection clause would "be tantamount to a denial of private relief." *J.I. Case Co. v. Borak*, 377 U.S 426, 432 (1964). Here, Lee seeks to "protect the interests of the corporation from the misfeasance and malfeasance of faithless directors and managers." *Kamen*, 500 U.S. at 95 (internal quotation marks and citation omitted). That goal cannot be achieved through a direct action. Lee cannot "effectively . . . vindicate [her] statutory cause of action" in the bylaw's forum (i.e., the Delaware Court of Chancery) because that forum lacks jurisdiction over her § 14(a) claim. *McMahon*, 482 U.S. at 240 (citation omitted).[1]

Unlike the plaintiffs in *McMahon*, who retained the right to assert their Exchange Act claims in arbitration, Lee faces a "consequential restriction on [her] substantive right[]" to bring a derivative § 14(a) claim, *id.* at 232, which *Borak* recognized was vital to "effective . . . enforcement" of the

---

[1] The majority suggests that forum-selection clauses such as Gap's "functionally require[] the use of a direct action to enforce" § 14(a), Op. 20, implying that all § 14(a) claims must be brought as direct actions, and any future derivative § 14(a) actions can be foreclosed altogether. If true, this assertion would violate the Exchange Act's antiwaiver provision because the right to enforce § 14(a) violations "exists as to both derivative and direct causes." *J.I. Case Co. v. Borak*, 377 U.S 426, 431 (1964).

Exchange Act's proxy requirements, 377 U.S. at 432. Thus, because the bylaw's designated forum is "inadequate to enforce the statutory rights created by [the Act]," *McMahon*, 420 U.S. at 229, the bylaw's complete waiver of derivative actions under the Exchange Act violates Section 29(a).**[2]**

Third, Gap is incorrect that the forum-selection clause's waiver of Lee's *right to sue* under the Exchange Act falls outside the antiwaiver provision because it does not waive Gap's duty to comply with Rule 14a-9 or Delaware law. *Borak* implied a private right of action precisely because those substantive duties are inextricably linked to the right to judicial enforcement. *See* 377 U.S. at 431–32. In *Borak*, the Supreme Court affirmed both the existence and significance of a private right of action to bring a derivative claim for a violation of § 14(a). *Id.* at 432. *Borak*'s implied right of derivative action remains good law.

## 2

The argument that a judge-made policy in favor of forum-selection clauses supersedes the Exchange Act's antiwaiver provision fares no better. We have been cautioned against judicial "decisions giving improperly broad pre-emptive effect to judicially manufactured policies, rather than to the statutory text enacted by Congress pursuant to the Constitution." *Wyeth v. Levine*, 555 U.S. 555, 604

---

[2] If the majority is correct that, under Delaware law, Lee's action would be re-categorized as a direct action because it "claim[s] that a duty of disclosure violation impaired the stockholders' right to cast an informed vote," *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 766, 772 (Del. 2006); *see* Op. 15-18, then the forum-selection bylaw has no effect because, as the majority notes, the bylaw "has no impact on direct actions." Op. 18. Thus, if true, the lawsuit could not be dismissed and must remain in federal court. *See* 15 U.S.C. § 78aa(a).

LEE V. FISHER                                   63

(2009) (Thomas, J., concurring).  At its core, the theory that judicially created policies always supersede clear statutory language is not viable.

Gap relies on *McMahon* for the proposition that the Supreme Court has permitted private agreements that eliminate one or more of the procedural mechanisms available for enforcing the Exchange Act, so long as other mechanisms remain viable.  In *McMahon*, the Court approved a contract that required arbitration of private Exchange Act claims, blocking shareholders from bringing those claims in court.  The Court emphasized that arbitration there "provide[d] an adequate means of in enforcing the provisions of the Exchange Act." *McMahon*, 482 U.S. at 229.  Accordingly, the Court indicated that the antiwaiver provision would be violated "only" in the case where arbitration was "inadequate to protect the substantive rights at issue." *Id.*

But Gap's discussion of *McMahon* elides two critical components of the Court's analysis, which rested on its conclusions that (1) the Federal Arbitration Act ("FAA") authorizes agreements to arbitrate Exchange Act and other statutory claims, *id.* at 225–27, and (2) an agreement to assert Exchange Act claims in another competent forum "does not constitute a waiver of 'compliance with any provision' of the Exchange Act under § 29(a)," *id.* at 228, so long as "arbitration is adequate to vindicate Exchange Act rights," *id.* at 238.   In other words, arbitration agreements generally do not violate Section 29(a) because they are an exercise of "a broader right to select the forum for resolving disputes," rather than a means of waiving claims altogether. *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 483 (1989).

64                      LEE V. FISHER

By contrast, Gap's forum-selection bylaw accomplishes the opposite: rather than facilitating the resolution of Exchange Act disputes, it forecloses all derivative claims under the Act. *McMahon* cannot be construed to hold that a bylaw relegating Exchange Act claims to a forum that lacks authority to adjudicate them is enforceable. Instead, under *McMahon*, such a bylaw violates Section 29(a) because the specified forum is "inadequate to enforce the statutory rights created by [the Act]." 482 U.S. at 228–29.

Gap also leans heavily on *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081 (9th Cir. 2018), and *Richards v. Lloyd's of London*, 135 F.3d 1289 (9th Cir. 1998) (en banc), as demonstrating that the Exchange Act's antiwaiver provision cannot void Gap's forum-selection bylaw. But *Sun* involved state-law claims, not federal statutory rights. Accordingly, its overbroad language—namely, that "the strong federal policy in favor of enforcing forum-selection clauses . . . supersede[s] antiwaiver provisions in state statutes as well as federal statutes, regardless whether the clause points to a state court, a foreign court, or another federal court," *Sun*, 901 F.3d at 1089–90—is dicta confined to its facts. Moreover, enforcement of the forum-selection clause there did not result in the waiver of the substantive state-law rights because the court conditioned the dismissal on the requirement that the defendants "could not argue that California securities laws do not apply to the disputed transaction," and defendants also "committed to refraining from raising any argument" that Washington securities laws were inapplicable in California. *Id.* at 1085–86, 1092 (internal quotation marks omitted). Specifically, the agreement provided that claims subject to exclusive federal

jurisdiction could be filed in the federal district court in California, thus avoiding any issue of foreclosing federal claims from being litigated in federal court. *See id.* at 1085.

In *Richards*, our decision to uphold the forum-selection and choice-of-law provisions leaned heavily on "the context of an international agreement" and Supreme Court case law specific to that context. 135 F.3d at 1295. Unlike *Richards*, which involved a forum-selection clause in an international agreement that was negotiated at arm's length by sophisticated parties, Gap's bylaw applies to domestic transactions and is not the product of negotiation. *See Seafarers*, 23 F.4th at 726–27.

Finally, neither *Atlantic Marine* nor *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), enforced a forum-selection clause that would have required the plaintiff to surrender a federal statutory claim. *Atlantic Marine* concerned a clause requiring transfer between federal courts in different states, which the plaintiff resisted on grounds of convenience and the relative expertise of federal judges in different states with respect to state-law claims. *See* 571 U.S. at 67–68. *Bremen* involved claims under the general maritime law, and the plaintiff did not argue so much that the foreign court selected by the contractual agreement would apply a different substantive law as that it was more likely to enforce the exculpatory clause to which the plaintiff had already agreed. *See* 407 U.S. at 15–16.

Moreover, both cases consistently emphasized the importance of consent. *Atlantic Marine*, for instance, presumed that the plaintiff had "agree[d] by contract to bring suit only in a specified forum—presumably in exchange for other binding promises by the defendant." 571 U.S. at 63. The *Atlantic Marine* Court underscored that "[t]he

'enforcement of valid forum-selection clauses, *bargained for by the parties*, protects their legitimate expectations and furthers vital interests of the justice system.'" *Id.* (emphasis added) (quoting *Stewart*, 487 U.S. at 33 (Kennedy, J., concurring)). Similarly, *Bremen* stressed that "[t]he choice of [an English] forum was made in an arm's length negotiation by experienced and sophisticated businessmen," 407 U.S. at 12, and that the parties agreed to the forum-selection clause "[a]fter reviewing the contract and making several changes, but without any alteration in the forum-selection or exculpatory clauses," *id.* at 3.

The present case differs from *Atlantic Marine* and *Bremen* in three important respects. The first is that the plaintiffs in those cases primarily opposed the selected forum because of concerns related to convenience for the plaintiff and the costs of litigation. The forum-selection bylaw here, by contrast, presents the concern that such bylaws enable a corporation to opt out of substantive federal claims by selecting a forum in which such claims cannot be brought. Second, neither case involved a forum-selection clause that had been inserted via corporate bylaw. Purchasers of Gap stock may or may not be sophisticated parties, but they have no opportunity to negotiate the content of the bylaws or alter terms not to their liking. They did not agree to the forum-selection provision "in exchange for other binding promises by the defendant," nor does the provision represent "their legitimate expectations." *Atlantic Marine*, 571 U.S. at 63 (citation omitted). And third, the stakes are raised when a forum-selection clause operates to bar a federal statutory claim. Under the Supremacy Clause, the plaintiff's right to pursue such a claim supersedes other policy considerations. *See* U.S. Const. art. VI, cl. 2.

In sum, the cases cited by Gap do not control the outcome in this case because none involved the complete, nonconsensual waiver of an exclusive federal statutory claim.

## II

Gap's forum-selection bylaw is not only invalid; it is also unenforceable because it violates a strong public policy of the federal forum. The Supreme Court has held that a forum-selection clause is generally enforceable under the *forum non conveniens* doctrine unless there are "extraordinary circumstances unrelated to the convenience of the parties" that "clearly disfavor a transfer." *Atlantic Marine*, 571 U.S. at 52. As relevant here, a forum-selection clause is unenforceable where "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *Bremen*, 407 U.S. at 15; *see Sun*, 901 F.3d at 1088.

Lee points to two relevant public policies of the federal forum: (A) Section 29(a)'s antiwaiver requirement, 15 U.S.C. § 78cc(a), and (B) Section 27(a)'s exclusive-jurisdiction provision, 15 U.S.C. § 78aa(a), which precludes transfer to a state forum.[3]

---

[3] Amici in support of Lee identify an additional federal statutory policy: § 14(a) of the Exchange Act reflects "the congressional belief that '(f)air corporate suffrage is an important right that should attach to every equity security bought on a public exchange.'" And *Borak*'s implied private right of action generally reflects a judgment that such "remedy is necessary or at least helpful to the accomplishment of the statutory purpose." *Cannon v. Univ. of Chi.*, 441 U.S. 677, 703 & n.35 (1979) (citing *Borak* as an example).

68                    LEE V. FISHER

A

The Exchange Act's antiwaiver provision announces a strong public policy of the federal forum. The majority's extension of *Sun* and *Richards* to domestic investments and state-law remedies in this context "undermine[s] the pivotal decisions by Congress in 1933 and 1934 to assume the dominant role in securities regulation after decades of ineffective state regulation." *Seafarers*, 23 F.4th at 727. Both federal securities acts contain antiwaiver provisions that prevent parties from opting out of the federal laws in favor of state law, regardless of how similar or strong the state-law rights and remedies are. *See* 15 U.S.C. §§ 77n, 78cc(a).

As the Seventh Circuit held in *Seafarers*, "[n]on-waiver is woven into the public policy of the federal securities laws because it is the express statutory law." 23 F.4th at 727. "And that law is binding," particularly where there "are no countervailing international policy interests at stake." *Id.* Here, enforcement of Gap's forum-selection clause, which points to a domestic forum, thwarts federal law by blocking any adjudication of derivative § 14(a) claims.

The majority cites *Sun*, which construed *Richards* as holding that "an antiwaiver provision, without more, does not supersede the strong federal policy of enforcing forum-selection clauses." 901 F.3d at 1090; *cf. Gemini Techs., Inc. v. Smith & Wesson Corp.*, 931 F.3d 911, 916 (9th Cir. 2019) (holding that a similar Idaho nonwaiver provision "clearly states a strong public policy" based on the contrived distinction that the Idaho statute actually uses the words "public policy"). *Sun* also stated that the "strong federal policy in favor of enforcing forum-selection clauses would supersede antiwaiver provisions in state statutes as well as

LEE V. FISHER                                    69

federal statutes." 901 F.3d at 1090. But these "holdings" are more accurately characterized as dicta because the *Sun* court did not have before it a conflict between an antiwaiver provision and a forum-selection clause. *See* Op. 37–38 n.17. Nor did it discuss how a federal common-law policy favoring forum-selection clauses could "supersede" a contrary federal statutory imperative. *Id.*

Unlike *McMahon*, which required the Supreme Court to reconcile the FAA's "federal policy favoring arbitration" and the Exchange Act's antiwaiver provision, 482 U.S. at 226 (citation omitted), the "strong federal policy in favor of enforcing forum-selection clauses" articulated in *Sun*, 901 F.3d at 1090, does not derive from a competing federal statute. Instead, it is a matter of federal common law. That judge-made policy must yield—in the absence of comity principles favoring enforcement—when it contravenes a federal statutory right. *See* U.S. Const. Art. VI, cl. 2; *City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304, 317 (1981) ("[I]t is for Congress, not federal courts, to articulate the appropriate standards to be applied as a matter of federal law.").

The Supreme Court's decision in *Borak* provides strong support for the primacy of the Exchange Act over federal common law. *Borak* emphasized that "[p]rivate enforcement of the proxy rules" under § 14(a) supplies "a necessary supplement to [SEC] action." 377 U.S. at 432. In *Borak*, the question presented was whether there was an implied right of action under § 14(a) and whether that right should extend to derivative actions. *Id.* at 431–35. The Supreme Court affirmed that there exists a private right of action to enforce § 14(a) violations and that the right "exists as to both derivative and direct causes." *Id.* at 431. *Borak* underscores the Exchange Act's strong public policy of an

70          LEE v. FISHER

exclusive federal forum in which to litigate Exchange Act claims.

The majority goes to great lengths to assert that *Borak* is no longer good law. It claims that *Borak* was not well reasoned, conflicted with Supreme Court precedent on derivative actions, and was not well explained. *See* Op. 24–35. But the majority also concedes that "[n]o Supreme Court decision since *Borak* has expressly addressed this issue." Op. 29. Criticisms of a Supreme Court decision do not mean that the decision is not binding on us. Such an assertion would fly in the face of the rule of law and upend the supremacy of Supreme Court decisions. We are not free to overrule Supreme Court precedent. *Borak* has not been overruled by the Supreme Court. *See Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1104 n.11 (1991) (stating that "[t]he object of [the Court's] enquiry does not extend further to question the holding of [*Borak*]"). It remains good law and is binding on us.

B

The Exchange Act's exclusive-jurisdiction provision indicates a legislative concern for greater federal control over the adjudication of particular federal claims. *See Matsushita*, 516 U.S. at 383 (holding that the Exchange Act's exclusive-jurisdiction provision sought "to achieve greater uniformity of construction and more effective and expert application of that law" (citation omitted)); *see also Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 483–84 (1981) ("The factors generally recommending exclusive federal-court jurisdiction over an area of federal law include . . . the assumed greater hospitality of federal courts to peculiarly federal claims."). That concern is amplified by the presence of the Exchange Act's antiwaiver provision.

LEE V. FISHER                                                71

The joint operation of the Exchange Act's exclusive-jurisdiction provision, which precludes state courts from hearing Exchange Act claims, and that Act's antiwaiver provision, which invalidates any agreement to waive an Exchange Act claim, reflects a strong public policy of ensuring federal control over Exchange Act claims. Enforcing a forum-selection clause such as Gap's would ensure that no federal court could ever adjudicate the merits of a derivative Section 14(a) claim brought against a company whose bylaws include such a clause. This result would be inconsistent with ensuring greater federal control over the adjudication of such claims—a goal Congress communicated by including both an exclusive-jurisdiction provision and an antiwaiver provision in the Exchange Act. Thus, because bylaws such as Gap's have the effect of transforming Exchange Act derivative actions into state-law derivative actions and depriving plaintiffs of any forum for such actions, enforcement of Gap's bylaw contravenes a strong federal public policy.

III

In short, the Exchange Act voids Gap's forum-selection bylaw, and it is rendered unenforceable by the strong public policy expressed by Congress in the Exchange Act's antiwaiver and exclusive-jurisdiction provisions. The majority's contrary conclusion renders the Exchange Act's protections meaningless, effectively prohibiting Lee's properly asserted derivative claim from being adjudicated in any forum. That was not the intent of Congress.

Therefore, I respectfully dissent.